JOURNAL ENTRY and OPINION
In this action for personal injury resulting from a trip and fall on a city sidewalk, plaintiff-appellant Janice Conley appeals from the trial court orders that granted the separate motions for directed verdict made by defendants-appellees City of Cleveland and David Kirschenbaum, Trustee of the property located at 1400 West 3rd Street.
Appellant argues the directed verdicts for appellees were inappropriate, contending she presented sufficient evidence to create factual issues regarding the height deviation in the sidewalk, the attendant circumstances surrounding the incident, and the notice appellee city had of a defect in the sidewalk. After a thorough examination of the record, this court finds the trial court's actions were correct. Its orders, therefore, are affirmed.
Appellant's injury occurred on a "[t]ypical July day,"[1] viz., July 11, 1997. Appellant, a schoolteacher, had a 9:00 a.m. appointment with her attorney, who maintained an office in the Illuminating Building located near Public Square in downtown Cleveland.
Appellant drove downtown from her residence. She was accompanied by her father, William Hraster, and a family friend, Evelyn Werner. Since appellant's father had some infirmities, she permitted him and the friend to exit the vehicle close to the building. Appellant then proceeded "around the block to find a parking spot" while the others preceded her to the office.
Appellant located a parking space "at a meter on West 3rd Street." The parking meter was the second one from the corner of West 3rd Street and an alley that paralleled St. Clair Avenue; thus, it was in front of the vacant office building located at 1400 West 3rd Street.
When appellant had been in her attorney's office approximately an hour, she realized the time on the parking meter soon would expire. She therefore left the Illuminating Building to return to her vehicle.
Appellant crossed West 3rd Street at its intersection with Frankfort Avenue and walked northbound on the sidewalk to reach her vehicle. As she approached the parking meter, she "look[ed] down periodically" but also "looked to make sure, of course, [she] didn't have a parking ticket" placed beneath her windshield wiper. "And at that point, [her] feet, the front of [her] foot caught the raised concrete and [she] fell face forward." Appellant noticed that she had been walking on a "slab" of the sidewalk that was "down lower" than the one on which her foot had caught.
Appellant's fall resulted in fractures of her right elbow and a finger on her left hand. However, she initially did not realize the extent of her injuries. After being aided to stand by a passerby, she returned to her vehicle to collect herself, placed money in the parking meter, then returned to her attorney's office.
Appellant's father noticed her disheveled appearance. When she explained the incident to him, he asked her to "show him." Appellant agreed; thus, upon the conclusion of her business, she retrieved her vehicle, collected her father and their friend, and utilized a route that took them past the location of the incident. Appellant directed her father's attention to the area of her fall. He told her to "[g]o slow" in order for him to observe the sidewalk.
Appellant's father "could see it very easily, and [he] could see it was in need of repair"; from his vantage point,[2] "the one behind (sic) it was not even or smooth, so it was like 2, 3, 4 inches that should have been raised or replaced." He did not, however, look at the area closely since his interest was only "in knowing how [her fall] happened" and urging his daughter "to get [her] elbow X-rayed."
Some days later, appellant's father telephoned appellee city's property division in an effort to discover the identity of the owner of the property on which the incident occurred.
In August 1997, appellant's attorney retained the services of Kim Knapik, an "independent adjustor" employed by "Cunningham, Lindsay Claim Services." Knapik was introduced to appellant, who explained the incident. Shortly thereafter, Knapik "took photographs" of the area where appellant fell. At that time, Knapik noticed an area of the sidewalk adjacent to the parking meters near the street corner was different in color and texture from the surrounding sidewalk.
Appellant filed the instant action in January 1998, naming both appellee city and appellee Kirschenbaum[3] as defendants. In count one of her complaint,[4] appellant alleged appellees' negligent maintenance of the sidewalk proximately caused her injuries. After appellees filed answers to the complaint and cross-claims against each other, discovery proceeded in the action.
In October 1998, both appellees filed motions for summary judgment that were supported by affidavits and deposition testimony obtained during discovery. Appellant opposed these motions. Although each appellee filed a reply, the trial court denied their motions for summary judgment in December 1998. The trial court also denied appellee city's subsequent motion for reconsideration. The parties therefore prepared for trial.
A jury trial commenced on April 28, 1999. Appellant testified and presented the videotaped testimony of her treating physician. On cross-examination, appellant also presented the testimony of John Petkac, appellee city's superintendent of sidewalks.
In view of the unavailability of her father, who had died, and of appellee Kirschenbaum, the trial court permitted appellant to introduce into evidence the deposition testimony of these two witnesses. Finally, appellant called as a witness on cross-examination Andrew Cowan, the property manager of 1400 West 3rd Street.
At the conclusion of the testimony, appellant introduced into evidence, in pertinent part, the following: (1) several 1998 photographs of the sidewalk area at the location of the incident; (2) copies of her medical records; (3) a copy of a check from Cowan dated "7-31-97" made out to "Larry Loy" in the amount of $20 for "sidewalk repair"; and (4) a copy of a letter from appellee city in 1991 notifying appellee Kirschenbaum that a portion of sidewalk on his property, viz., the [n]orthline 1st , 2nd , 3rd and 4th courses," was "in need of maintenance" since it was "off grade," that Kirschenbaum would need to either repair it or file an appeal of the notification, and that failure to do so would result in a finding of guilty of a violation of "C.O. 505.12(G)."
At the conclusion of appellant's evidence, appellee city moved for a Civ.R. 50 directed verdict. The trial court granted the city's motion, basing its decision on The Tort Reform Act" and on "the fact that [appellee] ha[d] received no actual or constructive notice of the alleged defects in the sidewalk."
Although appellee Kirschenbaum also made a motion, the trial court at that time denied it. Therefore, appellee Kirschenbaum called as witnesses Kim Knapik and Andrew Cowan. At the conclusion of their testimony, the trial court granted appellee Kirschenbaum's renewed motion for a directed verdict. The trial court stated the evidence adduced at trial demonstrated the sidewalk defect upon which appellant fell was "clearly" less than two inches and that appellee Kirschenbaum had made no repairs to the area since the time of the fall.
Appellant has filed a timely appeal of the trial court's decisions.[5] She presents five interrelated assignments of error arranged in logical order as follows:
 V. THE DIRECTED (SIC) IN FAVOR IN FAVOR (SIC)OF BOTH OF BOTH OF (SIC) THE DEFENDANT (SIC) SHOULD NOT HAVE BEEN GRANTED AS REASONABLE MINDS COULD NOT COME TO BUT ONE CONCLUSION ADVERSE TO THE PLAINTIFF.
 III. IT WAS IMPROPER TO GRANT A DIRECTED VERDICT TO DEFENDANT CLEVELAND BASED ON OHIO REVISED CODE S2744.
 IV. DEFENDANT CLEVELAND WAS NOT ENTITLED TO A DIRECTED VERDICT AS IT IS A QUESTION OF FACT WHETHER THE SIDEWALK DEFECT WAS GREATER THAN TWO INCHES AND BECAUSE DEFENDANT CLEVELAND HAD ACTUAL OR CONSTRUCTIVE NOTICE OF THE SIDEWALK DEFECT.
 I. THE TRIAL COURT IMPROPERLY GRANTED A DIRECTED VERDICT FOR DEFENDANT KIRSCHENBAUM SINCE IT WAS A QUESTION OF FACT OF THE ACTUAL HEIGHT OF THE SIDEWALK DEFECT.
 II. THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT FOR DEFENDANT KIRSCHENBAUM
 BECAUSE OF THE ATTENDANT CIRCUMSTANCES THAT WERE PRESENT AND SINCE THE PLAINTIFF WAS KEEPING A PROPER LOOKOUT.
In its appellate brief, appellee city acknowledges that the "Tort Reform Act" has been declared unconstitutional and indicates that, consequently, it no longer asserts the defense of immunity pursuant to R.C. 2744 et seq. Since this defense is abandoned, appellant's third assignment of error must be sustained; however, the disposition of that assignment of error does not affect the outcome of this appeal.
Although appellant asserts the trial court's actions were improper on the basis that she provided "substantial competent evidence" to support her negligence claim as to each appellee, this court disagrees.
Civ.R. 50(A) provides in pertinent part:
 RULE 50. Motion for a directed verdict and for judgment notwithstanding the verdict. (A) Motion for directed verdict.
* * *
 (4) When granted on the evidence. When a motion for a directed verdict has been properly made and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
Regarding a motion for a directed verdict, the Ohio Supreme Court has stated as follows:
 When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; * * *. The evidence is granted its most favorable interpretation and is considered as establishing every material fact it tends to prove. The "reasonable minds" test of Civ.R. 50(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of that party's claim. See Hamben Lodge v. Ohio Fuel Gas Co. (1934), 127 Ohio St. 469. Weighing evidence connotes finding facts from the evidence submitted; no such role is undertaken by the court in considering a motion for a directed verdict. A motion for a directed verdict raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence.
Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66 at 68, 69. (Emphasis added.) The court further noted:
 Simply because resolution of a question of law involves a consideration of the evidence does not mean that the question of law is converted into a question of fact or that a factual issue is raised.
Id. at 68. (Emphasis added.) See, also, Cater v. Cleveland (1998), 83 Ohio St.3d 24, 31; Eldridge v. Firestone Tire Rubber Co. (1985), 24 Ohio App.3d 94.
It follows that:
 * * * it is the duty of the trial court to direct a verdict in defendant's favor when there is no evidence tending to prove an essential element of the plaintiff's cause of action. (Citations omitted.)
Hutchinson v. Sun Refining Marketing Co. (July 14, 1988), Cuyahoga App. No. 54140, unreported.
To establish her negligence claim against appellees, appellant had to show three essential elements: (1) a duty or obligation on the part of appellees to protect her from injury; (2) a breach of that duty; and (3) an injury proximately resulting from that breach. Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142.
A sidewalk on a public street is presumed to be under the control of the municipality. Eichorn v. Lustig's, Inc. (1954),161 Ohio St. 11, 13. R.C. 723.01 imposes a duty on a municipal corporation to keep the sidewalks free from nuisance. Ruwe v. Bd. of Springfield Twp. Trustees (1987), 29 Ohio St.3d 59. A city's liability for failure to perform such a duty, however, cannot arise except upon proof either that its agents or officers actually created the faulty condition from which injury resulted or that it had notice thereof, actual or constructive. Id.
Appellant never asserted appellee city created any defect in the sidewalk; rather, appellant argues that her evidence was sufficient to demonstrate the city had notice. Appellant's argument is baseless.
Appellant first contends appellant's father's testimony indicates the city may have had actual notice of a defective condition existing in the sidewalk. A review of his testimony, however, provides absolutely no support for this contention.
Appellant's father testified that at some time following his daughter's fall, he telephoned the city's properties division. He stated his purpose in doing so was only to discover the ownership of the property upon which the sidewalk was located. No evidence was presented to suggest the city worker in the properties department to whom appellant's father spoke had any knowledge relating to the property's sidewalks.
Appellant also contends she presented evidence concerning the condition of the sidewalk such that the city's constructive notice of it was a jury question; however, the record fails to support her argument.
 Constructive notice * * * requires the plaintiff to demonstrate that the nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and presuming it had been discovered it would have created a reasonable apprehension of potential danger. Beebe v. Toledo [(1958), 168 Ohio St. 203].
Hobson v. City of Dayton (Sept. 20, 1996), Montgomery App. No. 15497, unreported. (Emphasis added.)
As to the first element, actual existence of a defect on the sidewalk, the trial court had only the testimony of appellant. Appellant stated she tripped due to a difference in elevation between two slabs of the sidewalk near the parking meter. She orally estimated this height differential as between two and four inches.
However, using her fingers, appellant demonstrated this height differential to the trial court. The trial transcript contains no actual measure of appellant's demonstration. The trial court stated on the record, however, that appellant's demonstration of the difference in elevation was clearly not two inches or more. (Emphasis added.)
The trial court directly observed appellant as she testified. On the other hand, appellant's father's estimate of the height differential as expressed in his deposition testimony lacked any context. Appellant's father described neither his perspective nor his distance from the sidewalk when he observed it. In the face of an inadequate record on appeal, this court presumes regularity; therefore, the trial court's assessment of appellant's demonstrative evidence must be accepted.
Since appellant's gesture indicated to the trial court only a slight difference of height between the sidewalk slabs, the trial court determined appellee city had breached no duty toward appellant. The trial court was correct.
In Amend v. Bluemel (Dec. 17, 1992), Cuyahoga App. No. 63450, unreported, this court held as follows:
This court has stated in previous decisions:
 A municipality is not liable for a defect in a sidewalk of two inches or less, Amos v. Cleveland (1959), 169 Ohio St. 367; Gallagher v. Toledo (1959), 168 Ohio St. 508; see, also, Kimball v. Cincinnati (1953), 216 Ohio St. 370, syllabus, unless attendant circumstances create a situation in which a court cannot find that the defect is insubstantial as a matter of law. Cash v. Cincinnati (1981), 65 Ohio St.2d 319, 324.
Eden v. Shaker Heights (Dec. 12, 1991), Cuyahoga App. No. 61695, unreported, at 3.
Appellant presented insufficient attendant circumstances to overcome the presumption established in Helms v. American Legion, Inc. (1966), 5 Ohio St.2d 60. McGuire v. Sears, Roebuck Co. (1996), 118 Ohio App.3d 494; Backus v. Giant Eagle (1996),125 Ohio App.3d 155; Stockhauser v. Archdiocese of Cincinnati (1994),97 Ohio App.3d 29; cf., Cash v. Cincinnati (1981), 66 Ohio St.2d 319.
Appellant testified it was a typical July day; thus, visibility was excellent. She stated she occasionally glanced at the sidewalk as she approached her vehicle. She failed to mention any distractions existed to remove her attention from where she placed her feet, such as numerous pedestrians blocking her path. Furthermore, she did not indicate the type of footwear she wore would tend to increase the precariousness of her balance. Based upon the facts, reasonable minds could conclude only that the sidewalk contained a trivial imperfection that was not unreasonably dangerous. Tycast v. Maple Hts. Bd. of Edn. (Mar. 25, 1999), Cuyahoga App. No. 75304, unreported; Hughes v. Kuzak (Feb. 22, 1996), Cuyahoga App. No. 69007, unreported.
As to the second element required to demonstrate constructive notice, the city's superintendent of sidewalks, John Petcak, testified that he had thoroughly researched the city's records of sidewalk complaints and citations. He stated that in spite of his efforts, he had found none since 1992, five years prior to appellant's fall, that related to the property located at 1400 West 3rd Street.[6] Furthermore, the copy of the 1991 letter to Kirschenbaum indicating a portion of the sidewalk area was off grade related only to a portion of the sidewalk on the north side of the property, not to the east side where appellant fell. In short, there was no evidence that any defective condition existed for any length of time prior to the incident on the portion of the sidewalk upon which appellant fell. Cf., Harp v. Cleveland Heights (2000), 87 Ohio St.3d 506.
R.C. 723.01 does not make a municipality an insurer of the safety of persons in the use of its sidewalks * * *. Shaniker v. City of Cleveland (Mar. 2, 1989), Cuyahoga App. No. 55083, unreported, at 4. Since appellant failed to provide evidence appellee city had any notice, actual or constructive, of any problem with the sidewalk in front of 1400 West 3rd Street, the trial court properly granted the city's motion for a directed verdict on appellant's claims. See, e.g., Ruwe v. Bd. of Springfield Twp. Trustees, supra; Edmonds v. Corporate Services Management Estates (Nov. 2, 1995), Cuyahoga App. No. 68016, unreported; Miller v. Cleveland (Sept. 12, 1991), Cuyahoga App No. 59258, unreported.
Similarly, nothing in the record supports appellant's assertion that she presented sufficient evidence to make a directed verdict inappropriate as to Kirschenbaum's liability.
 It is the generally accepted principle in Ohio that "[a]n owner of property abutting a public sidewalk is not, generally, liable for injuries sustained by a pedestrian thereon." Crowe v. Hoffman (1983), 13 Ohio App.3d 254, 255, 468 N.E.2d 1120 citing Eichorn v. Lustig's, Inc. (1954), 161 Ohio St. 11, 117 N.E.2d 436. To this general rule, there are three exceptions. First, when a pedestrian sustains injuries under such circumstances, the abutting property owner will be liable if a statute or ordinance imposes upon him a specific duty to keep the sidewalk adjoining his property in good repair. Hoffman, supra citing Dennison v. Buckeye Parking Corp. (1953), 94 Ohio App. 379, 115 N.E.2d 187; see also Gall, et al. v. Systems Parking, Inc. (October 27, 1994), Cuyahoga App. No. 66159, unreported. Second, the property owner will be liable if by affirmative acts he created or negligently maintained the defective or dangerous condition causing the injury. Eichorn, supra. Third, the property owner will incur liability if he negligently permitted the defective or dangerous condition to exist for some private use or benefit. Eichorn, supra.
 Where a municipality enacts an ordinance imposing liability on a property owner for damages sustained by third parties for an owner's failure to comply with the ordinance, and where that municipality fails to provide the owner with notice of its violation, the ordinance may not be relied upon to impose liability on the owner. Hughes v. Kozak (February 22, 1996), Cuyahoga App. No. 69007, un-reported, citing Eisenhuth v. Moneyhon (1954), 161 Ohio St. 367, 119 N.E.2d 440. Furthermore, "[t]o interpret the ordinance to require that the City specifically authorizes a third party suit or civil liability is misreading the ordinance." Walker v. City of Parma (May 30, 1991), Cuyahoga App No. 60540, unreported.
Kingston v. Austin Development Co. (Feb. 5, 1998), Cuyahoga App. No. 72034, unreported. (Emphasis in original; underscoring added.) See, also, Elkins v. City of Lakewood (Nov. 25, 1998), Cuyahoga App. No. 73778, unreported; MacCutcheon v. Kidman (Aug. 18, 1994), Cuyahoga App. No. 66117, unreported.
In this case, the evidence proved the following: (1) the city notified Kirschenbaum the sidewalk on the north side of the property was not in compliance with the ordinance in 1991; (2) appellant's fall was sustained on the east side of the property; (3) the 1991 notification resulted in apparently acceptable side-walk repairs since Kirschenbaum never received a citation; and (4) the sidewalk repair for which Kirschenbaum's property manager paid some weeks after appellant's fall actually was made for the curbon the Frankfort, or south, side of the property. Thus, there was no evidence of any violation. Moreover, since the height differential in the slabs was slight, there was no evidence that a defective condition existed on the premises so as to create any liability on Kirschenbaum's part. Helms v. American Legion, Inc., supra, syllabus. Under these circumstances, a directed verdict on appellant's claim in Kirschenbaum's favor also was appropriate. See, e.g., Rosemann v. Berea (Sept. 2, 1999), Cuyahoga App. No. 74523, unreported; MacCutcheon v. Kidman, supra; Edmonds v. Corporate Services Management Estates, supra.
For the foregoing reasons, appellant's first, second, fourth and fifth assignments of error are overruled.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
 _______________________ KENNETH A. ROCCO, J.
TERRENCE O'DONNELL, P.J. and PATRICIA A. BLACKMON, J. CONCUR
[1] Quotes indicate testimony given by a witness at trial.
[2] Since neither appellant nor her father testified as to the direction appellant's vehicle proceeded, it is impossible to determine whether appellant's father viewed the sidewalk from the passenger-side window or from his seat next to appellant, through her window and across West 3rd Street.
[3] Appellant misspelled appellee Kirschenbaum's name on the face of the complaint.
[4] Appellant's complaint contained a second "count" that challenged the constitutionality of H.B. 350, the "Tort Reform" Act. This "claim," being actually a challenge to appellee city's potential defense of immunity, was only minimally addressed in the trial court. The Ohio Supreme Court's decision in State ex rel. Ohio Acadamy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451, effectively moots this issue, thereby making the trial court's orders of directed verdict final and appealable. R.C.2505.02(B)(1); cf., Taylor v. County of Cuyahoga (Jan. 20, 2000), Cuyahoga App. No. 75473, unreported; Sanders v. Marrero (Feb. 9, 2000), Lorain App. No. 98CA007002, unreported.
[5] See footnote 4.
[6] Petcak also testified that pursuant to a discovery request, he provided five years worth of * * * city-wide [sidewalk] records to appellant's attorney.