JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Kathelean Stanton appeals from the trial court order that granted the motions for directed verdict made by defendants-appellees the City of Cleveland and its employees during the jury trial below, thus terminating appellant's action, which sought compensation for the city's demolition of her rental house.
 {¶ 2} Appellant makes the following arguments in her assignments of error: the evidence did not warrant a directed verdict for appellees on the claims she made in her complaint; the city had less drastic means to accomplish its purpose in regard to her property; and, the city's actions led it to be prevented by the doctrines of either waiver or equitable estoppel from proceeding to demolish her house.
 {¶ 3} This court has reviewed the record with appellant's arguments in mind, but, since the city and its employees were immune from liability, finds no merit to them. Consequently, the trial court's order is affirmed.
 {¶ 4} Appellant is a Cleveland police officer who purchased in the late 1980s as investment property a two-family house located at 1123 East 74th Street. Over the years that followed, appellant rented each of the units to a series of tenants who had little concern for them; eventually, both units were left vacant.
 {¶ 5} On September 27, 2000 appellant received a six-page letter regarding the property from the city which bore the title "Notice of Violation of Housing Ordinances." The "type of violation" was set forth as "condemnation MS [Main Structure]."
 {¶ 6} The first full sentence of the notice indicated that the notice "shall be complied with and all violations corrected by 10/27/00." Directly thereunder, in the first full paragraph, appellant was warned that "failure to comply with this notice will result in prosecutive action or other penalty as provided by law 3103.99." The same paragraph informed appellant she had "the right to appeal this order," with the precise location for the filing of an appeal specified.
 {¶ 7} The second paragraph warned appellant that "failure to comply with this notice shall result in the demolition of the building(s)." Appellant was requested to "contact the inspector upon receipt of this notice."
 {¶ 8} Pages 2 through 4 of the document cited twenty-five separate sections of housing code violations found on the property by the inspector. Inter alia, the house lacked water and sewage facilities, a working furnace, and a functioning electrical system. Each code violation required a "comply date" of "10/27/2000." The first stated as follows:
 {¶ 9} "The dangerous conditions presented by this structure shall be abated [by] demolishing the structure and removing all debris from the premises; or correcting the violations set out below after all requisite plans and specifications have been submitted * * * and all requisite permits have been obtained * * *. Pending the corrections of violations, this structure may be effectively boarded * * *. Failure to acquire a rehabilitation permit within (30) days of the issuance of a permit to board shall result in the structure being scheduled for demolition."
 {¶ 10} The record reflects appellant never filed an appeal of the notice of demolition. Appellant contacted the city's housing inspector, Camille Smith; Smith reiterated appellant had to obtain the necessary permits and to bring the house into compliance in order to halt the demolition process.
 {¶ 11} Appellant subsequently appeared in housing court to answer the separate criminal citations she received for the housing code violations. During the pendency of her prosecution on these charges, appellant engaged the services of some handymen to make minor cosmetic repairs to the premises. The first repairman had difficulty gaining ingress, however, since the house had been boarded in November, 2000.
 {¶ 12} Smith made several more visits to appellant's property. After she conducted another inspection in July, 2001, so few substantive corrections had been made that Smith sent the file on appellant's property to the city's service manager, Damien Borkowski. Borkowski examined the file before signing an order authorizing a contractor to proceed with demolition of appellant's rental house, effective August 29, 2001. The record reflects Borkowski signed the order on August 22, 2001.
 {¶ 13} The record further reflects that on the following day, August 23, 2001, appellant obtained two certificates from the city's Division of Building and Housing. These permitted appellant one month to install in the rental house heating and air conditioning and electrical systems. Each certificate cost appellant $40 to obtain. Each expired in one month.
 {¶ 14} Borkowski sent a "courtesy" letter to appellant dated August 24, 2001 that notified her the city was "currently accepting bids for the demolition of" her rental house. The letter directed appellant to call the Bureau of Demolition for "further information."
 {¶ 15} Appellant, however, did not make any telephone call; rather, since she had a hearing scheduled in housing court on September 13, 2001, she simply met Inspector Smith at the rental home, as planned, before the hearing. Smith's visit was for the purpose of re-inspecting the house for information to give the housing court regarding the current state of the premises.
 {¶ 16} At this meeting, appellant informed Smith she had "pulled the permits" for the heating and electrical systems; appellant asked Smith on that basis to remove the rental house from demolition. Smith cautiously agreed only to give Borkowski the information.
 {¶ 17} Three days later, during the housing court hearing, appellant entered a plea of no contest to the charges against her. The housing court granted appellant 40 days to "mitigate" the violations before her case would be called for sentencing. Demolition was not specifically mentioned by either the city prosecutor, Smith, or appellant.
 {¶ 18} Shortly thereafter, appellant went on a vacation. Upon her return, appellant discovered the house had been demolished on September 21, 2001.
 {¶ 19} Appellant subsequently filed the instant action seeking compensation for the city's "taking" of her property. Her complaint named as defendants the following: the city; the city's building commissioner, Robert Vilkas; Borkowski; and Smith.[1] In pertinent part, appellant set forth three claims for relief. She asserted the demolition constituted a "wrongful taking" by the city in violation of city ordinances and without due process of law, that the city's employees had engaged in "wanton and reckless conduct," and that the individual defendants were separately liable for their actions.
 {¶ 20} The case eventually proceeded to a jury trial. Appellees moved for a directed verdict after appellant's opening statement, but the trial court denied the motion. After appellant had presented her case, however, the trial court granted a renewed motion as to the individual appellees. The trial court finally additionally issued a directed verdict for the city following the presentation of its case.
 {¶ 21} Appellant appeals from the orders of the trial court with four interrelated assignments of error, which state:
 {¶ 22} "I. The trial court erred by granting the appellee's (sic) motion for directed verdict pursuant to Civ.R. 50(A)(4).
 {¶ 23} "II. The trial court erred when it failed to find that appellant had pulled permits and started repairs and that less drastic means could have been employed by the city other than demolition.
 {¶ 24} "III. The court erred when it ruled for a directed verdict for appellee, city of Cleveland, that it had satisfied the notice requirement to the appellant.
 {¶ 25} "IV. The trial court erred when it failed to find that the appellees were equitably estopped from demolishing the appellant's house."
 {¶ 26} In these assignments of error, appellant essentially argues she presented evidence adequate not only to overcome appellees' motions for directed verdicts, but also to obtain judgment in her favor on her claims. This court disagrees.
 {¶ 27} The trial court granted judgment to appellees pursuant to Civ.R. 50(A)(4). In applying that rule, the determination for the court to make "is not whether one version of the facts presented is more persuasive than another; rather, it is a determination that only one result could be reached under the theories of law presented in the complaint." Eldridge v. Firestone Tire Rubber Co. (1985),24 Ohio App.3d 94.
 {¶ 28} R.C. 2744.02(A)(1) provides immunity to a political subdivision for "damages in a civil action for * * * loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental * * * function." Building inspections and the taking of actions in connection with such inspections, including demolition to abate a nuisance, constitutes a governmental function. Brewer v. WestChester Twp. Planning Zoning Dept., Butler App. No. CA2002-01-026, 2002-Ohio-4483; Monesky v. Wadsworth (Apr. 3, 1996), Medina App. No. 2478-M.
 {¶ 29} Once immunity for the political subdivision is established by the facts of the case, the court must consider whether any of the exceptions listed in R.C. 2744.02(B) applies. Cater v. Cleveland,83 Ohio St.3d 24, 29, 1998-Ohio-421.[2] If, as in this case, none does, the court need not reach the third portion of the analysis. Brewerv. West Chester Twp. Planning Zoning Dept., supra.
 {¶ 30} All of the evidence in this case established appellant's rental house, as it existed immediately prior to the demolition, constituted a nuisance; appellant had made nothing but minor cosmetic changes despite being afforded a year to rehabilitate the house. Appellant's assertions notwithstanding, "there was no failure of reasonable notice in this instance, only a failure to act upon that notice." Cleveland v. W.E. Davis Co. (July 18, 1996), Cuyahoga App. No. 69915, slip opinion at 11. Since a municipality is immune from claims that sound in tort stemming from its abatement of a nuisance, the trial court correctly granted the city's motion for a directed verdict. Harrisv. Akron (July 23, 1997), Summit App. No. 17945.
 {¶ 31} Appellant argues the city waited too long to actually demolish the house; she contends the doctrine of estoppel[3] applies to preclude the city from liability on her claims. This court previously has determined, however, that "estoppel will not lie against a municipality in the exercise of its governmental functions." Cleveland v. W.E. DavisCo., supra.
 {¶ 32} Appellant additionally argues that Vilkas, Borkowski and Smith, the city's employees, acted in a malicious, wanton or reckless fashion, and in bad faith with regard to her rental house. The third portion of the immunity analysis is utilized in examining appellant's claims against the city's employees in their individual capacities.Brewer v. West Chester Twp. Planning and Zoning Dept., supra. R.C.2744.03(A) grants immunity to the municipality's employees only if they were acting within the scope of their "official responsibilities" and without "malicious purpose, in bad faith, or in a wanton or reckless manner[.]"
 {¶ 33} Appellant provided no evidence in this case to establish the abrogation of immunity for the individual appellees. Borkowski testified the policies and procedures established by the building commissioner had been followed in the process of demolishing appellant's house. Smith indicated she had given appellant every opportunity over the course of a year to correct the nuisance. Consequently, Smith had no reason in the completely separate forum of appellant's plea hearing in housing court to restate the decision, which already twice had been communicated to appellant, to proceed. None of these appellees, moreover, had personal feelings toward appellant. Therefore, the trial court also properly granted a directed verdict to the individual appellees on appellant's claims. Brewer v. Butler Cty. Bldg. and Zoning Dept. (2001),142 Ohio App.3d 567.; Brewer v. West Chester Twp. Planning and ZoningDept., supra.
 {¶ 34} Appellant's assignments of error, accordingly, are overruled.
 {¶ 35} The judgment is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Michael J. Corrigan, J. and James J. Sweeney, J. concur.
[1] Two other named defendants were dismissed from the action prior to trial; appellant does not challenge these dismissals.
[2] The enumerated exceptions include negligent operation of a motor vehicle, negligent conduct of employees while carrying out a proprietary
function, failure to keep roads and sidewalks free from nuisance, negligently causing injury on the grounds of certain government property, and situations in which liability is expressly imposed by law, e.g., malicious prosecution.
[3] In the trial court, appellant labeled this argument as the city's "waiver" of its decision to abate the nuisance.