JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Goodman Weiss Miller, L.L.P. ("GWM"), appeals the jury verdict and the rulings of the trial court on trial and post-judgment motions in favor of appellees, Environmental Network Corp. ("ENC"), Environmental Network and Management Corp. ("ENMC"), and John Wetterich ("Wetterich"), (collectively "appellees"). After review of the record and the arguments of the parties, we affirm.
 {¶ 2} On December 9, 2002, appellees filed a legal malpractice complaint against GWM.[1] The complaint stemmed from GWM's representation of appellees in a complex commercial lawsuit against Waste Management of Ohio ("WMO"), TNT Rubbish Disposal, Inc. ("TNT"), and others.[2] The underlying litigation dealt with breach of contract issues involving numerous parties, who were linked to agreements concerning operation of the San-Lan Landfill. The San-Lan Landfill is owned by Hocking Environmental Company ("Hocking"); however, ENMC became the operator of the facility in a 1995 agreement and was thereafter responsible for its functions. ENMC is owned by Wetterich, who also owns ENC. The underlying litigation ended in a settlement agreement in December 2001, after trial commenced.
 {¶ 3} Appellees were dissatisfied with the resulting settlement and how it transpired. They filed a legal malpractice complaint against GWM claiming that *Page 5 
GWM had coerced them into settling and was negligent in its preparation and prosecution of the case. GWM timely answered appellees' complaint and filed several counterclaims, including breach of contract, misrepresentation, and abuse of process.[3]
 {¶ 4} On September 19, 2005, a jury trial commenced. During the course of trial, GWM moved the court for a directed verdict, which was denied. The jury trial concluded on September 30, 2005, and on October 3, 2005 the jury returned its verdict, finding that GWM owed appellees a duty of professional care and had breached that duty, citing six instances of legal malpractice.[4] The jury further found that GWM's breach had caused appellees harm or damages and awarded appellees the sum of $2,419,616.81. The jury also found some merit in GWM's counterclaims and awarded it the sum of $15,540.
 {¶ 5} On November 3, 2005, GWM filed a motion for judgment notwithstanding the verdict, or in the alternative, a motion for new trial. On January 30, 2006, in a 25-page order and decision, the trial court denied both post-judgment motions. *Page 6 
 {¶ 6} GWM appeals, asserting four assignments of error. Since assignments of error I, III, and IV challenge the same rulings for differing reasons, we address them together.
 {¶ 7} "I. The trial court erred in denying defendant-appellant's motion for directed verdict and later, its motion for judgment notwithstanding the verdict, because plaintiffs-appellees failed to prove that the alleged legal malpractice was the proximate cause of any damages.
 {¶ 8} "III. The trial court erred in denying defendant-appellant's motion for directed verdict and later, its motion for judgment notwithstanding the verdict, because plaintiffs-appellees failed to present evidence to show what, if any, net recovery they should have achieved, had the underlying case been tried to conclusion.
 {¶ 9} "IV. The trial court erred in denying defendant-appellant's motion for directed verdict and later, its motion for judgment notwithstanding the verdict, on the issue of lost profit damages — including claimed `out-of-pocket' losses — under restatement of contracts § 351(2)(b), because plaintiffs-appellees failed to present evidence that the damages claimed would have been recoverable in the underlying case."
 {¶ 10} GWM cites various reasons why the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict. Our analysis is consolidated since "[t]he applicable standard of review to appellate challenges to *Page 7 
the overruling of motions for judgment notwithstanding the verdict is identical to that applicable to motions for a directed verdict."Posin v. ABC Motor Court Hotel (1976), 45 Ohio St.2d 271,344 N.E.2d 334; McKenney v. Hillside Dairy Corp. (1996), 109 Ohio App.3d 164, 176,671 N.E.2d 1291.
 {¶ 11} A motion for judgment notwithstanding the verdict under Civ.R. 50(B) tests the legal sufficiency of the evidence. Brooks v. BrostFoundry Co. (May 3, 1991), Cuyahoga App. No. 58065. "'A review of the trial court's denial of appellant's motion for a directed verdict and motion for judgment notwithstanding the verdict requires a preliminary analysis of the components of the action * * *.' Shore, Shirley Co. v.Kelley (1988), 40 Ohio App.3d 10, 13, 531 N.E.2d 333, 337." Star BankNatl. Assn. v. Cirrocumulus Ltd. Partnership (1997),121 Ohio App.3d 731, 742-43, 700 N.E.2d 918, citing McKenney v. Hillside Dairy Co.
(1996), 109 Ohio App.3d 164, 176, 671 N.E.2d 1291 and Pariseau v. WedgeProducts, Inc. (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511.
 {¶ 12} The motions test the legal sufficiency of the evidence and present a question of law, which we review independently, i.e., de novo, upon appeal. See Grau v. Kleinschmidt (1987), 31 Ohio St.3d 84, 90,509 N.E.2d 399; Eldridge v. Firestone Tire Rubber Co. (1985),24 Ohio App.3d 94, 493 N.E.2d 293. A motion for judgment notwithstanding the verdict should be denied if there is substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim. Posin, supra at 275. "Conversely, the motion *Page 8 
should be granted where the evidence is legally insufficient to support the verdict." Id.
 {¶ 13} In Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169,539 N.E.2d 1114, the court wrote in pertinent part: "The test for granting a directed verdict or [judgment notwithstanding the verdict] is whether the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the non-movant." Id. at 172.
 {¶ 14} Here, appellees brought a claim of legal malpractice against GWM, alleging that negligent representation caused damages. "To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." Vahila v.Hall, 77 Ohio St.3d 421, 1997-Ohio-259, 674 N.E.2d 1164, syllabus, citing Krahn v. Kinney (1989), 43 Ohio St.3d 103, 538 N.E.2d 1058.
 {¶ 15} GWM does not challenge the sufficiency of the evidence raised by appellees concerning whether there was a duty owed or whether such a duty was breached. Rather, it challenges the sufficiency of the evidence concerning alleged damages and the causal connection between any negligent representation and *Page 9 
those alleged damages. GWM argues that appellees have not presented legally sufficient evidence establishing either causation or damages. We disagree.
 {¶ 16} During the course of the jury trial, appellees presented testimony, documents, and exhibits demonstrating their understanding of the facts and circumstances surrounding the underlying complex commercial litigation. Through the presentation of this material, appellees were able to establish some of the merits to their underlying case.
 {¶ 17} Wetterich testified to his understanding of the "Waste Disposal and Airspace Reservation Agreement" ("Agreement") between ENMC and WMO. Wetterich also testified to deals involving TNT and others in which those parties owed money to ENC. There was further testimony indicating that appellees had a strong case in the underlying litigation and that they could have received considerable compensation had they not settled as they did. Accordingly, appellees argued GWM's negligent representation cost them a better resolution to the underlying litigation than the settlement they received. Pursuant to the evidence presented by appellees at trial in this case, the jury agreed and found a causal connection between GWM's breach and appellees' damages.
 {¶ 18} Furthermore, in its order denying GWM's motion for judgment notwithstanding the verdict, the trial court stated:
 {¶ 19} "Based on the evidence and the arguments raised by the parties in their respective briefs, this Court finds that, underVahila, [appellees] offered substantial *Page 10 
probative evidence to the trier of fact on proximate cause sufficient to sustain the jury verdict. * * *
 {¶ 20} "It is clear under Vahila, and its progeny that a legal malpractice plaintiff is not required to prove in every instance the `case-within-the-case.' Rather, as argued by [appellees],Vahila stands for the rule of law that a plaintiff `may be required, depending on the situation, to prove some evidence of the merits of the underlying claim.' (Emphasis added.) Vahila at 428. The Supreme Court's holding was clearly based on the equitable concerns that a requirement for a legal malpractice plaintiff to prove the entire `case-within-a-case' would likely deter a large number of plaintiffs from bringing suits of merit, which in effect would immunize negligent attorneys.
 {¶ 21} "* * *
 {¶ 22} "Based on the abundance of testimony and documentary evidence presented by [appellees] at trial, [appellees] clearly proved `some evidence of the merits of the underlying claim' in satisfaction ofVahila. Therefore, [appellees] provided substantial probative evidence that [appellant's] negligence proximately caused [appellees'] damages. * * *" (Order and Decision pg. 12-14.)
 {¶ 23} In its appeal, GWM takes exception to the trial court's interpretation of Vahila, supra, and in the trial court's use of that interpretation to require appellees to simply prove "some evidence of the merits of the underlying claim" in order to prevail *Page 11 
in this legal malpractice case. GWM argues that the law requires appellees to prove, by a preponderance of the evidence, that appellees should have succeeded at a trial on the merits of the underlying commercial litigation, and that appellees should have achieved a better net recovery at the end of a concluded trial than they obtained through their settlement. In other words, GWM contends that appellees were required to completely prove the "case-within-a-case" in order to prevail. We find no merit in this argument.
 {¶ 24} In Vahila, supra, the Court clarified its position on a claimant's requirements to establish causation in a legal malpractice case, stating:
 {¶ 25} "We are aware that the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case. Naturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim. [Citations omitted.] However, we cannot endorse a blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter. Such a requirement would be unjust, making any recovery virtually impossible for those who truly have a meritorious legal malpractice claim." Vahila, supra.
 {¶ 26} Consequently, the standard to prove causation in a legal malpractice case requires a claimant to "provide some evidence of the merits of the underlying claim." Id. GWM contends that, unless appellees can demonstrate that they would *Page 12 
have prevailed on the merits of a trial heard to its conclusion, and that they would have recovered a specific amount of damage award at the conclusion of that trial, they cannot prevail. GWM further argues that unless appellees can show that "but for" GWM's breach of duty, they would have prevailed at trial for a certain damage award, they cannot establish causation. The ruling in Vahila, supra, clearly rejects such an argument, stating:
 {¶ 27} "A strict `but for' test also ignores settlement opportunities lost due to the attorney's negligence. The test focuses on whether the client would have won in the original action. A high standard of proof of causation encourages courts' tendencies to exclude evidence about settlement as too remote and speculative. The standard therefore excludes consideration of the most common form of client
 {¶ 28} recovery.
 {¶ 29} "In addition, stringent standards of proving `but for' require the plaintiff to conduct a `trial within a trial' to show the validity of his underlying claim. A full, theoretically complete reconstruction of the original trial would require evidence about such matters as the size of jury verdicts in the original jurisdiction. * * * But such evidence is too remote and speculative; the new factfinder must try the merits of both the malpractice suit and the underlying claim to make an independent determination of the damage award. The cost and complexity of such a proceeding may well discourage the few plaintiffs otherwise willing to pursue the slim chance of *Page 13 
success." Vahila at 426-427, quoting, The Standard of Proof of Causationin Legal Malpractice Cases (1978), 63 Cornell L.Rev. 666, 670-671.
 {¶ 30} The trial court did not err in requiring appellees to merely provide some evidence of the merits of the underlying claim. Appellees clearly met that burden at trial, as seen in the record and succinctly articulated by the trial court as follows:
 {¶ 31} "The jury's findings were based on the abundance of evidence presented at trial as to what the outcome of the underlying litigation would have been had [GWM] not breached the standard of care. The record shows that [appellees] submitted documents establishing the terms of the underlying [Agreement] ([appellees'] exhibit 2), engineering maps and memoranda showing how the relevant airspace was to be parceled and developed ([appellees'] exhibits 58, 59, 66), documents showing how airspace had been developed in the past, which were used to assist in calculations of unused airspace ([appellees'] exhibits 62-64), documents showing that Waste Management was required to and failed to pay state and local fees for dumping trash in the San-Lan Landfill ([appellees'] exhibit 43), and documents and exhibits showing [appellees'] alleged out-of-pocket damages (see [appellees'] exhibit 47) and lost profits (see [appellees'] exhibit 52)." (Order and Decision at 13-14.)
 {¶ 32} Finding that appellees provided sufficient evidence at trial to legally establish causation, the remaining question is whether sufficient evidence was provided to establish recoverable damages. In its third and fourth assignments of *Page 14 
error, GWM argues that appellees failed to show what net recovery they would have received and that they failed to present evidence of any recoverable damages. GWM argues that if the proper standard of causation is simply "some evidence" of the merits, any damage award would be merely speculative, in violation of fundamental principals of damages awards. GWM further argues that appellees have not presented sufficient evidence for the jury to base an award on theories of lost profits or of "out-of-pocket" losses. None of these contentions have merit.
 {¶ 33} First, the jury was explicitly instructed not to speculate on the damage award when the trial court instructed: "The damages recoverable in a legal malpractice action cannot be remote or speculative as to the existence of damages precluding recovery."
 {¶ 34} In addition, the trial court charged:
 {¶ 35} "Lost profits are calculated by deciding what the party was entitled to receive had the contract been performed. You should then add other damages, if any, by the party as a result of the breach. From this sum you should subtract the amounts, if any, that the parties saved by not having to fully perform the contract.
 {¶ 36} "Lost profits may not be recovered by a plaintiff in a breach of contract action, unless they can demonstrate: one, profits were within the contemplation of the parties to the contract at the time the contract was made; two, the lost profits were the probable result of the breach of contract; and three, the profits are not remote and speculative and may be shown with reasonable certainty. *Page 15 
 {¶ 37} "If a party fails to demonstrate with reasonable certainty the amount of lost profits as well as their existence, then they are not entitled to the lost profits. You may only award the damages that were the natural and probable result of the breach of the contract, or that were reasonably within the contemplation of the parties as the probable result of the breach of contract.
 {¶ 38} "This does not require that the party actually be aware of the damages that will result from the breach of contract, so long as the damages were reasonably foreseeable at the time the parties entered into the contract as a probable result of the breach." (Tr. 2275-2276.)
 {¶ 39} The jury charge clearly instructed the jurors not to speculate on any damage award, and it is completely in line with the pertinent case law requiring any award for lost profit to be based on losses foreseeable by the breaching party at the time they entered into the contract. See Sherman R. Smoot Co. v. State of Ohio (2000),136 Ohio App.3d 166, 736 N.E.2d 69.
 {¶ 40} After review of the record, it is clear that the jury award should be upheld. We note that the jury did not specify on which theory of recovery it based its award. Appellees presented evidence on different theories of damages, including lost profits and "out-of-pocket" loses. Both are legitimate theories of recovery, and both are supported by sufficient evidence to overrule GWM's assignments of error. Appellees' lost profits calculation was based on WMO's failure to loan ENMC an additional $800,000 for future development, as speculated in the original Agreement. *Page 16 
Appellees argued that this failure prohibited them from providing landfill space to third-party customers at $18 per ton. GWM attacks this calculation by arguing that WMO never contemplated such future sales to third-parties when it entered into the original agreement. Appellees presented an expert witness[5] who refuted such a contention that future sales were unforeseeable because GWM's articulated understanding of the Agreement would leave ENMC incapable of earning any profit. Thus, there is at least sufficient evidence to find that lost profits were recoverable in this case.
 {¶ 41} In addition, the jury could have just as easily based its damage award on "out-of-pocket" losses suffered by appellees. In Plaintiff's Exhibit 47, appellees presented to the jury a calculation of losses totaling $2,490,395, which is very close to the ultimate jury award in this case.[6] This amount could have been the foundation of a legitimate jury award based on the evidence presented at trial.
 {¶ 42} After review of the record in its totality, it is abundantly clear that there was sufficient evidence provided by appellees for the jury to have found and awarded the damages it did. Therefore, since the trial court applied the correct standard of proof as to causation in this case, and there is sufficient evidence to *Page 17 
support the jury's award for damages, appellant's first, third and fourth assignments of error are found to be without merit.
 {¶ 43} "II. The trial court erred in its jury instructions underVahila v. Hall, regarding proximate cause and damages, by failing to require plaintiffs-appellees to prove what the result of a trial in the underlying case should have been, but for the alleged malpractice."
 {¶ 44} GWM argues that the jury instructions issued by the trial court were in error. They specifically challenge the following instruction:
 {¶ 45} "[Appellees] are claiming that as a result of [GWM's] alleged breach of standard of care, they had to settle the [underlying] litigation against their will.
 {¶ 46} "[Appellees] claim [GWM] did not continue with the trial of the [underlying] case when specifically instructed to do so, and that if it had returned to court to continue to try the case, [appellees] would have achieved a better result than the settlement achieved.
 {¶ 47} "[Appellees] must prove some evidence of the merits of the [underlying] case claims. [Appellees] must establish by a preponderance of the evidence that the defendants breached their duty of care to the [appellees].
 {¶ 48} "Further, [appellees] must establish by a preponderance of the evidence that there is a causal connection between the conduct complained of and the resulting damage or loss. However, the requirement of a causal connection dictates that the merits of a legal malpractice action depends upon the merits of the [underlying] case and you should take into account all evidence you have heard to determine whether there exists some evidence of the merits of [appellees'] claims in the [underlying] litigation." (Tr. 2272-2273.)
 {¶ 49} GWM challenges the articulation of "some evidence of merits" as the applicable standard of causation in a legal malpractice case. As stated above, this standard of proof is entirely appropriate pursuant toVahila, supra. Therefore, we find no error in the trial court's jury instruction, and this assignment of error is without merit.
Judgment affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE
MARY EILEEN KILBANE, J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] Case No. CV-02-488462. The complaint also named as defendants attorneys Steven Miller, Deborah Michelson, and James Wertheim; however, they were dismissed from the case and are not parties to this appeal.
[2] Case No. CV-98-351105, which was later consolidated with Case No. CV-98 352363 and settled along with Case Nos. CV-98-372394, CV-99-389308, CV-01-443765.
[3] Appellant's abuse of process counterclaim was later dismissed.
[4] In answering the interrogatory inquiring as to the manner in which appellant breach its standard of care, the jury responded: "No engagement letter. Overall lack of [preparedness]. Case should have been continued, to allow for Mr. Steve Miller to participate. Plaintiff was coerced into signing settlement. Judge not recused. GWM council [sic] [alienated] the court." Interrogatories to the Jury, 10/3/05.
[5] Dr. John F. Burke.
[6] Plaintiff's Exhibit 47: [ENMC's] Damages (Out-Of-Pocket Losses) Due to WMO Breaches: $812,600 (Cost to develop unused landfill airspace * * * + $412,444 (Monies lost prepaid to Hocking for Royalty) + $496,235 (Equipment) + $400,000 (State penalty for fees not paid by WMO) + $300,000 (Schiff) + $69,116 (Trust Fund) = $2,490,395 (TOTAL). *Page 1