JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant Billy J. Garrett appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby reverse and remand the decision of the lower court.
 I. {¶ 2} According to the case, appellant sued the City of Cleveland and the Northeast Neighborhood Development Corporation alleging four causes of action. Appellant's complaint alleged a "taking" without just compensation, denial of due process, intentional misrepresentation and conversion on the part of appellees.
 {¶ 3} The City counterclaimed for its demolition costs and both the City and development corporation moved for summary judgment. The lower court granted summary judgment for the City and the development corporation. Appellant then appealed to this court the granting of the summary judgment for the City but not the granting of summary judgment for the development corporation.
 {¶ 4} According to the facts, City of Cleveland Building Inspector Rufus Taylor inspected 12404-06 Edmonton Avenue, Cleveland, Ohio ("the property") on February 5, 1998. Inspector Taylor observed numerous code violations and issued a condemnation notice to the property owner.[1]
 {¶ 5} Approximately two years later appellant purchased the property from the previous owner for $12,000. When appellant bought the house, it was condemned.[2] Appellant then spent approximately $35,000 attempting to bring the house up to code.[3] On July 26, 2000, appellant obtained building, plumbing, and HVAC permits to "correct condemnation [violation notice] dated 02/07/98." All three permits stated they would expire if appellant failed to complete the work by August 26, 2000.[4]
 {¶ 6} Although there is some confusion as to the number of visits, it does appear that a City inspector did visit the property. In addition, appellant states that Councilman Craig Willis, Cleveland City Council, Ward 9, told him that the City was considering purchasing the property. Appellant further states that because the City was going to purchase the property, he immediately stopped making repairs to the property. Councilman Willis introduced appellant to Emery Gibson, the head of Northeast Neighborhood Development Corporation, the local development corporation. Appellant believed that the development corporation would purchase his property.[5] Unfortunately, Councilman Willis eventually lost his re-election bid in November 2001.
 {¶ 7} Appellant visited Emery Gibson's office three times over the course of a year, and Gibson assured appellant that money would be coming. Gibson, who was not a City employee or agent, said that the development corporation would purchase the property. However, appellant states that he was not given anything in writing.
 {¶ 8} City Demolition Bureau Manager Damian A. Borkowski sent a courtesy letter to appellant on February 5, 2002, notifying him that the City was accepting bids to demolish the property. Borkowski further informed appellant that as the current property owner, he would be billed for the cost of demolition. Appellant called Borkowski and told him that the permits expired because appellant thought the City was going to buy the property, therefore appellant thought it was unnecessary to obtain additional permits to rehabilitate the property. Appellant stated that he was only concerned with getting his money from the development corporation at this point. On February 13, 2002, the City demolished appellant's property and sent him an invoice for $5,200 to cover the cost of the demolition.
 II. {¶ 9} Appellant's sole assignment of error states the following: "The trial court erred when it granted appellee city's motion for summary judgment because material issues of fact existed in the instant case."
 {¶ 10} This court reviews the lower court's granting of summary judgment de novo in accordance with the standards set forth in Civ.R. 56(C). North Coast Cable v. Hanneman (1994), 98 Ohio App.3d 434, 440.
 {¶ 11} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 12} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330; Mitseffv. Wheeler (1988), 38 Ohio St.3d 112, 115.
 {¶ 13} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108. UnderDresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 14} In the case at bar, appellant purchased the house in order to rehabilitate the property and rent out the individual units. The record indicates that when appellant bought the condemned house, it was in such a state of disrepair that appellant was able to purchase the home for $12,000. Appellant is an experienced businessman who owns approximately 20 houses and, as such, knew that he needed to contact the City regarding the status of the property.
 {¶ 15} After purchasing the property, appellant contacted the City and obtained various building permits from the division of building and housing. Appellant attached the July 26, 2000 building permit, HVAC permit and plumbing permit to his brief in opposition to defendant's motion for summary judgment.[6] After obtaining the permits, appellant hired several subcontractors to begin rehabilitating the property in order to bring it up to code.
 {¶ 16} In addition to obtaining various building permits, appellant states that he communicated with Councilman Willis and others regarding his property. Appellant states that it was his understanding that the City, through Councilman Willis and others, was going to buy his property. Exhibit D in appellant's brief in opposition to defendant's motion for summary judgment is a memo from Councilman Willis to various parties.
 {¶ 17} The memo is written to John James, Director, Research Staff, Cleveland City Council, and Joe Titran, Research Staff, Cleveland City Council. The memo also copies Assistant Commissioner Joe Sidoti, Division of Neighborhood Services, Tanya Allmond, Executive Director, Northeastern Neighborhood Development Corporation, and Emery Gibson, Northeastern Neighborhood Development Corporation. The memo provides dollar amounts for appellant's property and five other properties. The memo is written on City of Cleveland, Office of the Council, letterhead.
 {¶ 18} In addition to the permits and the memo, appellant testified that he communicated with Councilman Willis several times.
"Q. When you say `they,' who is the `they' that you were negotiatingwith, councilman Willis and anybody else?
 "A. Councilman Willis and Emery Gibson, who was from the housingdevelopment place.
 "Q. How many times were you contacted by Willis, Councilman Willis?
 "A. Over the period of time, at least six, seven times.
* * *
"Q. Did the councilman or Mr. Gibson specifically state that, `We willgive you $70,000 for this property?'
 "A. Wrote it on the paper. Got it wrote down."[7]
 {¶ 19} In addition to various meetings and correspondence with Councilman Willis and others, appellant also met with Ben Sei, a City building inspector, on several occasions.[8] Appellant testified that he talked with the City after receiving a condemnation letter.
"Q. Did you receive a condemnation letter at all or condemnation noticeregarding the tearing your house down?
 "A. Uh-uh. * * * So like I said, once I'm dealing with the city — as amatter of fact, I even went down there to City Hall. I talked with thechief housing inspector. He and me and Ben Sei, who is the footman forthe city, he's the inspector and the other inspector, the one who isdowntown sending him out to check houses — I went downtown and talkedwith him and I told him what the situation was, that the city waspurchasing the house and — I gave him the name to — I gave it to Willisand I gave it to Gibson. I gave them they [sic] number. And they in turnhad talked with them as far as I know."[9] (Emphasis added.)
 {¶ 20} In addition to the various communications and correspondence above, there is evidence that appellant spent a great deal of time and money rehabilitating the property. For example, Charles Dyson, who specializes in roofing, plastering and drywall, signed an affidavit regarding repairs to the property. Dyson's affidavit indicates that the cost of interior and exterior repairs and remodeling completed on the property totaled $15,000. Dyson further stated that from August through November 2000 he performed extensive interior and exterior repairs and remodeling of the property, including the removal of the old roof and its support beams, installation of new rafters, sheeting and shingles for the new roof, installation of downspouts and gutters, and the repair and rebuilding of interior and exterior walls.
 {¶ 21} John Sherman also signed an affidavit in which he stated that he is a carpenter specializing in roofing, plastering and drywall. Sherman stated that he also performed extensive interior and exterior repairs. In addition, Jerry Dyson is a master electrician who also signed an affidavit stating that he provided extensive repairs and installation of new electrical wiring throughout the property, valued at $5,000. The master plumber, James Dyson, also signed an affidavit stating that the value of his plumbing equipment, pipes, fixtures, fittings and labor totaled $8,000. Furthermore, HVAC specialist Chester Turner stated in his affidavit that he provided extensive HVAC services valued at $300.
 {¶ 22} Appellant spent a lot of time and money fixing the property and states that he only stopped working on the house after Councilman Willis told him to stop fixing the property.
"Q. And do you know why the councilman stopped by?
 "A. Yeah. After I spoke with him I knew. He told me that the city was— the house is sitting on — it's the only house sitting on this wholeacre. They had tore down everything else but this one house. He told methat the city was interested in buying my house because they were wantingto build new houses on that land. So he told me to stop work on the housebecause it would be null and void because they were going to get thehouse anyway bought by eminent domain. So then he and I startednegotiating. I originally asked for $115,000 for the house. We narrowedit down to $70,000. That's how we wound up with $70,000. They had went[sic] from 115 down to 70."[10]
 {¶ 23} In addition to the evidence above, there are additional disputes as to material facts. For example, there is a dispute as to what type of agreement appellant entered into with the City. Appellant states that he had an oral agreement, while the City states that there was no agreement. Moreover, appellant argues in his brief that although he signed for the City's condemnation notice via certified mail, the notice was addressed to the previous owner of the property and therefore defective.
 {¶ 24} Furthermore, there exists a genuine issue of material fact regarding whether the property was insecure, unsafe, or structurally defective. While it is true that appellant knew that the property was condemned when he purchased it, he made substantial improvements to the entire structure pursuant to its rehabilitation in order to bring it into compliance with the City's building code.
 {¶ 25} In addition to the remaining issues of material fact discussed above, we find that immunity does not apply in the case at bar. R.C.2744.03(A) grants immunity to a municipality's employees only if they were acting within the scope of their "official responsibilities" and without malicious purpose, in bad faith, or in a wanton or recklessmanner. Stanton v. The City of Cleveland, Cuyahoga App. No. 82614, 2003-Ohio-6618. (Emphasis added.)
 {¶ 26} The record demonstrates that the chief inspector and City inspector, Mr. Sei, had constructive notice, if not actual notice, as to appellant's situation. As previously mentioned, the City inspector visited the site on several occasions and was aware of appellant's situation. Furthermore, appellant contacted the City several times regarding his plight. While it is incumbent upon a homeowner to act reasonably regarding his or her property, it is also reasonable to expect a city to ensure that proper communication is achieved before demolishing a citizen's property.
 {¶ 27} In conclusion, viewing the evidence in a light most favorable to appellant, we find genuine issues of material fact remaining. In addition, given the evidence and wanton conduct of the City, we find immunity does not apply. There is substantial testimony and documentation supporting appellant's claim.
 {¶ 28} Appellant's assignment of error is sustained.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, P.J., concurs;
 Christine T. McMonagle, J., dissents (see separate dissentingopinion).
[1] See defendants' motion for summary judgment, Exhibit A, condemnation notice.
[2] Tr. 11-13.
[3] Tr. 13.
[4] See appellee's brief, p. 6.
[5] Tr. 21, 29-31, 47-48.
[6] See plaintiff's brief in opposition to defendant's motion for summary judgment, Exhibit B.
[7] Tr. 21.
[8] Tr. 18.
[9] Tr. 39-40.
[10] Tr. 20.
 DISSENTING OPINION