[Cite as *Utz v. Stovall*, 2013-Ohio-4299.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| JEAN UTZ, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-P-0135** |
| PHYLLIX STOVALL, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Portage County Court of Common Pleas.
Case No. 2009 CV 00378.

Judgment: Affirmed.

*Thomas N. Ganiaris*, 1930 Route 70 East, Suite L-59, Cherry Hill, NJ  08003 (For Plaintiff-Appellee).

*Edward G. Kramer*, Fair Housing Law Clinic, Jeremiah Ensworth House, 3214 Prospect Avenue, East, Cleveland, OH  44115-2601 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1}    Appellant, Phyllix Stovall, appeals the judgments of the Portage County Court of Common Pleas denying her motion for summary judgment, denying her motions for directed verdict, and granting plaintiff, Jean Utz's, motion for a new trial. The underlying action is a cause for breach of contract and defamation per se arising out of letters Stovall sent to Utz's employer, the superintendent of Streetsboro schools. The correspondence basically alleged that Utz made a derogatory racial comment,

harassed her children, and was a threat to other school children. Upon close of Utz's case, the trial court determined the statements were not made in good faith and/or were made with actual malice and, as a result, did not give an instruction regarding the defense of qualified privilege. The jury returned a verdict in favor of Utz, awarding $191,000 in punitive damages, though no compensatory damages.

{¶2} We conclude the following: the trial court's ruling on summary judgment is moot by virtue of the subsequent trial on the same issues demonstrating that there were, in fact, genuine issues of material fact supporting a judgment in favor of Utz, the nonmoving party; the trial court did not err in determining a qualified privilege did not apply; the trial court did not err in denying Stovall's motions for directed verdict because there was a sufficient evidentiary basis on which to conclude all elements of defamation per se had been met; and the trial court did not abuse its discretion in ordering a new trial because of confusing instructions requiring the jury to consider both the compensatory and punitive damages, and because punitive damages may not be awarded when a jury fails to award compensatory damages. As we affirm the order for a new trial, the issue of whether the punitive damages are excessive is moot. We affirm the judgments of the trial court.

{¶3} Stovall and Utz are neighbors and have abutting properties in Streetsboro, Ohio. Since 2000, the pair have quarreled over property and zoning issues, most notably Stovall's decision to erect a privacy wall on the property line which Utz previously characterized as a "monstrosity." The long-standing property dispute culminated in Stovall and her husband, Ray Stovall, filing a complaint in federal court against numerous defendants, including Utz. Relevant to this appeal, the Stovalls

2

alleged Utz's various complaints concerning their property were racially motivated. The factual allegations of the complaint filed in federal court set forth that Utz "took on a campaign to continually harass and intimidate the Stovall family because of their race and color." The complaint noted that Utz works at the school district the Stovall children attend, and that one of the Stovall children witnessed Utz "declining to assist a black child." The complaint charged that Utz has harassed, intimidated, humiliated, and embarrassed every member of the Stovall family and noted that the Stovalls "fear for the safety of their two young children."

{¶4} On August 20, 2008, the Stovalls entered into a settlement agreement with certain defendants, including Utz. The agreement provided, in relevant part:

> The Stovalls expressly agree that they will not use as a basis for any future claim they might pursue against * * * Utz, any fact or circumstance that occurred prior to the execution of this Agreement asserting that such fact or circumstance is a basis of a continuing violation for the purposes of establishing timeliness relating to a statute of limitations.

{¶5} On January 22, 2009, Stovall attended a spelling bee at Streetsboro Middle School in which her son was a participant. Utz attended the same spelling bee; her daughter was also a participant and, ultimately, the victor. The following day, Stovall wrote a letter to Utz's boss, Streetsboro Superintendent Linda Keller, wherein she alleged that Utz made a racially-motivated, derogatory, and "vexatious" comment during the spelling bee. Stovall alleged that Utz made a comment to her daughter purposefully within earshot of Stovall's son, remarking: "Kaley what's wrong? Do you smell an odor?" Stovall explained that this comment was directed at her son and concluded, in part:

I don't believe my child is being protected by the school district if Mrs. Utz is allowed to verbally attack my son's character. She works for the school district and has been questioned about previous demeaning behavior. * * * Her intentional infliction of emotional distress on my children is dangerous; due to her willful and wanton misconduct, her loss of regard for morality is a threat to the safety and wellbeing among their peers.

{¶6} As a result, a formal school inquiry was initiated, and Stovall wrote numerous follow-up letters as the investigation into the harassment allegations unfolded. On February 9, 2009, Stovall wrote to Superintendent Keller, attaching an article from the Indian Reservation that reminded her "of the many abuses my children faced living in Streetsboro and dealing with the City's school employee." The parties had a meeting together, after which Stovall wrote she was not satisfied with Utz's responses. Stovall attached two articles on racially-divided communities, explaining that the articles would provide insight into "why the remark was made, the reason it was made at that time and place, and why it is allowed to continue."

{¶7} On February 17, 2009, Dr. Richard F. Vrable, Director of Special Services for Streetsboro Schools, sent a letter to the Stovalls informing them that he would be initiating a further, full investigation. Stovall responded to the letter on February 22, 2009, explaining, in part:

Mrs. Utz's offensive behavior deprives all of our children of an environment that is conducive to learning. There have been many attempts to solve other problems created by Mrs. Utz. We have been unsuccessful instilling ideals and behavioral patterns which are consistent with mutual understanding, cooperation and respect.

{¶8} The letter went on to explain that Utz's "harassing and humiliating behavior has had a negative effect" on the educational development of the Stovall children.

4

{¶9} On March 12, 2009, Utz filed a complaint against Stovall alleging that Stovall had published false statements to the school and had repeated references to alleged past discriminatory conduct. Thus, the complaint alleged defamation, libel, and slander per se (Count One); intentional infliction of emotional distress (Count Two); intentional interference with business relationship (Count Three); and breach of contract, arising out of the settlement agreement (Count Four). Count Two and Count Three are not at issue in this appeal.

{¶10} The trial court denied competing motions for summary judgment, and the matter proceeded to a jury trial. Upon close of Utz's evidence, Stovall requested the trial court find a qualified privilege. The trial court explained it found actual malice, which negated the element of good faith required for a qualified privilege.

{¶11} Upon the close of all evidence, the parties agreed the claim for compensatory damages and the claim for punitive damages would not be bifurcated pursuant to R.C. 2315.21(B)(1). As such, the jury instructions set forth the issue of both categories of damage. The jury returned a verdict for Utz, awarding $191,000 in punitive damages, though awarding no compensatory damages.

{¶12} Following trial, Stovall filed a motion for judgment notwithstanding the verdict, claiming the punitive damages award could not stand without compensatory damages and was excessive. Specifically, Stovall contended that Utz failed to prove actual damages, and thus, the punitive damages award should be stricken. Utz also filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial. Utz argued that she did, in fact, prove compensatory damages, imploring the court to respect the $191,000 damages award, but restate the award as $31,000 to

5

$96,000 for compensatory damages and the remainder as punitive damages. Alternatively, Utz argued a new trial should be granted, asserting that the jury found she should prevail, but apparently did not follow the instructions concerning damages.

{¶13} The trial court granted Utz's motion for a new trial, noting:

> The jointly prepared jury instructions included instructions for nominal damages, compensatory damages and punitive damages. It is clear that the jury instructions were deficient and lacked proper guidance to assist the trier of fact in reaching a reasonable verdict. The instructions, lack of interrogatories and general verdict forms confused the jury in their analysis and findings.

{¶14} Stovall now appeals and asserts five assignments of error for review by this court which, for ease of discussion, will be addressed out of numerical order.

**Summary Judgment**

{¶15} Stovall's first and second assignments of error state:

> [1.] The trial court erred in not granting Appellant Stovall's motion for summary judgment since there was no clear and convincing evidence that Stovall's administrative complaint was made with actual malice.

> [2.] The trial court erred in not granting Appellant Stovall's summary judgment since there was no breach of the settlement agreement.

{¶16} Under her first and second assignments of error, Stovall claims the trial court erred as a matter of law in denying her motion for summary judgment. Utz points out the trial court did not technically rule on Stovall's motion, but in any respect, Utz argues the matter is moot. We point out that "a trial court's failure to rule on a motion creates a presumption that the trial court overruled the motion." *Cunnane-Gygli v. MacDougal*, 11th Dist. Geauga No. 2004-G-2597, 2005-Ohio-3258, ¶20. Further, the trial court also denied Utz's motion for summary judgment, determining genuine issues of material fact existed with regard to her claims.

6

{¶17} As a preliminary matter, we address Utz's contention that the matter is moot. As argued by Utz, the Supreme Court of Ohio has stated that "[a]ny error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150 (1994), syllabus.

{¶18} As this court further explained in *Kessler v. Totus Tuss, L.L.C.*, 185 Ohio App.3d 240, 2009-Ohio-6376, ¶38 (11th Dist.):

> The point is, even if the trial court's ruling on a moving party's motion was incorrect on a matter of law, reversing the matter would be more unjust to the party who won judgment after the evidence was more completely presented, cross-examination had, and where witnesses were heard and their credibility appraised. * * * In effect, even if appellants' motion had some legal merit prior to presentation of all the evidence, the denial was inconsequential due to the court's judgment after the trial on the merits.

{¶19} Here, the court's judgment after the trial on the merits has been set aside and held for naught, subject to review by this court; accordingly, we cannot conclude the matter is moot.

{¶20} Our concern, however, lies with the procedural effect of this denial after a new trial has been ordered. The denial of a summary judgment motion does not determine an action and prevent a judgment and, therefore, generally does not constitute a final order. *Celebrezze v. Netzley*, 51 Ohio St.3d 89, 90 (1990). Specifically, "the denial of summary judgment in defamation actions is not 'an order made in a special proceeding,' pursuant to R.C. 2505.02[.]" *Id.* at 92-93. However, "[i]f a trial court determines, as here, that a genuine issue exists as to whether the allegedly-

7

libelous statements were not protected expressions of opinion, then summary judgment must be denied, and such denial 'is reviewable on appeal by the movant [only] from a subsequent adverse final judgment.'" *Id.*, quoting *Balson v. Dodds*, 62 Ohio St.2d 287 (1980), paragraph one of the syllabus. This case presents something of a procedural quagmire: Stovall did indeed face a subsequent adverse judgment; however, that judgment has been set aside and held for naught, subject to review by this court. In effect, this order still does not determine the action or prevent a judgment.

{¶21} Stovall argues summary judgment as to the defamation claim was appropriate as a matter of law because her complaint to the school enjoyed a qualified privilege.

{¶22} This court has previously cited the elements a defendant must prove to invoke the qualified privilege defense as follows: "[A] defendant must establish that (1) he acted in good faith; (2) there was an interest to be upheld; (3) the statement was limited in its scope to the purpose of upholding that interest; (4) the occasion was proper; and (5) the publication was made in a proper manner and only to proper parties." *Mosley v. Evans*, 90 Ohio App.3d 633, 636 (11th Dist.1993), citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 246 (1975).

{¶23} In *McCoy v. Maxwell*, 11th Dist. Portage No. 2001-P-0132, 2002-Ohio-7157, ¶30, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996), we addressed a defendant's motion for summary judgment on the grounds of qualified privilege:

> A defendant moving for summary judgment on the basis of qualified privilege must present sufficient evidence to demonstrate that no genuine issue of material fact exists as to each of the elements of the affirmative defense. * * * If the defendant can establish that there is no genuine issue of material fact on each element, then the plaintiff can only overcome qualified privilege by establishing with

8

convincing clarity that defendant acted with actual malice. In a summary judgment motion claiming an affirmative defense, however, the nonmoving plaintiff does not have to present any evidence unless the defendant first satisfies her burden.

{¶24} Upon review, the evidentiary material supported that Stovall's complaint was framed under a concern about her children. This is an appropriate interest to be upheld. The issue, however, becomes whether Stovall acted in good faith and, moreover, whether these complaints were limited in their scope to the purpose of upholding that interest. The issue is whether Stovall's comments beyond the mere recitation of Utz's objectionable remark satisfied the "limited scope" element. When construing the evidence in favor of the nonmoving party, it is clear this is a question that cannot be resolved based on the evidentiary materials submitted. It cannot be concluded the court erred in finding there to be genuine issues of fact which needed to be resolved at trial.

{¶25} Stovall next argues summary judgment as to the breach of contract claim was appropriate as a matter of law because, quite simply, she did not breach the terms of the settlement agreement, and assuming she did, Utz could not prove damages.

{¶26} Paragraph 3 of the Settlement Agreement releases Utz from "any and all manner of claims, demands, warranties, actions, causes of action, suits * * * damages of whatever nature * * * including, but not limited to, those matters asserted in the Action or that could have been asserted in the Action." The Settlement Agreement also stated that the Stovalls "expressly agree that they will not use as a basis for any future claim they might pursue against * * * Utz, any fact or circumstance that occurred prior to the execution of this Agreement asserting that such fact or circumstance is a basis of a

9

continuing violation for the purposes of establishing timeliness relating to a statute of limitations."

**{¶27}** Paragraph 9 of the Settlement Agreement states "there will be no retaliatory action taken by the Parties against one another."

**{¶28}** Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach. *See National City Bank v. Erskine & Sons*, 158 Ohio St. 450 (1953).

**{¶29}** The Settlement Agreement, executed August 20, 2008, specifically prohibits Stovall from asserting as "the basis for any future claim" any fact or circumstance that occurred prior to the execution of the agreement and releases Utz from, inter alia, any and all claims asserted in the prior action or claims that could have been asserted in the prior action. Evidentiary material demonstrates that Stovall's writings are laced with incidents and allegations that occurred prior to the parties executing the Settlement Agreement, to wit: "Mrs. Utz has taunted us with racially motivated rhetoric for the past eleven years"; "I have had to endure this behavior, the verbal abuse and insults for many years"; "[s]he works for the school district and has been questioned about previous demeaning behavior"; and "[w]e have been unsuccessful instilling ideals and behavioral patterns which are consistent with mutual understanding, cooperation and respect." A jury could determine that this complaint against Utz was presented, at least in part, based on incidents that occurred prior to execution of the Settlement Agreement. With regard to damages, Utz averred that after

10

seeing the formal written complaint she was ill and has experienced numerous physical ailments for which she has sought medical treatment. Utz also averred that she has had to use numerous personal days as a result of Stovall's breach of the Settlement Agreement.

**{¶30}** It therefore cannot be concluded that the trial court erred in finding this to be an issue for determination at trial.

**{¶31}** Stovall's first and second assignments of error are without merit.

**{¶32}** Stovall's third and fifth assignments of error state:

**Qualified Privilege**

**{¶33}** "[3.] [The] trial court erred in not making a ruling that filing of the administrative complaint was subject to qualified privilege."

**Directed Verdict**

**{¶34}** "[5.] The trial court erred in not granting Appellant Stovall's two motions for a directed verdict stating that there was no clear and convincing evidence that Stovall's complaint was made with actual malice and that Stovall breached the terms of the settlement agreement."

**{¶35}** Pursuant to Civ.R. 50(A)(4), a motion for directed verdict should be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]"

**{¶36}** When a trial court determines whether to grant a motion for directed verdict, it is testing the legal sufficiency of the evidence by examining the materiality of the evidence rather than the conclusions which can be drawn from such evidence.

*Eldridge v. Firestone Tire & Rubber Co.*, 24 Ohio App.3d 94, 96 (10th Dist.1985).  It is therefore a legal determination of whether only one result can be reached under the "theories of law presented."  *Id.*  The trial court must give the opposing party the benefit of all reasonable inferences from the evidence and must not independently weigh the evidence or determine the credibility of the witnesses.  *Id.*  As the motion for directed verdict presents questions of law and not factual issues, this court employs a de novo standard of review.  *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995).

{¶37}  After Utz rested, Stovall moved for a directed verdict, which was denied with respect to the counts of breach of contract, defamation, libel, and slander per se.  The trial court stated, "after listening to the evidence, at least from the Plaintiff's side, there seems to be actual malice, and, therefore, no qualified privilege."

{¶38}  After the close of evidence, Stovall renewed the motion for directed verdict.  The motion was again denied.

{¶39}  The parties then argued whether the issue of qualified privilege should be presented to the jury.  Utz's attorney indicated that Stovall could not meet all five requirements to invoke qualified privilege, i.e, that she acted in good faith; there was an interest to be upheld; the statement was limited in its scope to the purpose of upholding that interest; the occasion was proper; and the publication was made in a proper manner and only to proper parties.  Specifically, Utz's attorney argued that Stovall could not demonstrate that she acted in good faith and that the statement was properly limited in its scope.  Conversely, Stovall argued that she met the five elements of qualified privilege.

12

**{¶40}** The trial court found Stovall's affirmative defense of qualified privilege inapplicable, noting it agreed with Stovall that the statement was limited in its scope, but stated: "on lack of good faith, that's a little different. Do I believe there was actual malice here? Yes, I do. I mean, it's overwhelming, I think. So I'm going to deny qualified privilege."

**{¶41}** Therefore, in denying Stovall's motions for directed verdict, the trial court found the doctrine of qualified privilege inapplicable. On appeal, Stovall maintains that a parent has the right to file a complaint against a school employee and that the defense of qualified privilege is applicable to this case. We must decide whether the statements made by Stovall were qualifiedly privileged.

> **{¶42}** Conditional or qualified privilege is based on public policy. It does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, *and makes a showing of falsity and actual malice essential to the right of recovery*.

> **{¶43}** A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. *The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only*.

50 American Jurisprudence 2d 698, Libel and Slander, Section 195. (Emphasis added.)

**{¶44}** Some measure of clarification should be made regarding the issue of "good faith" and "actual malice" in the context of a claim of qualified privilege. As the Ohio Supreme Court has held in *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 11 (1995):

13

**{¶45}** The issue of 'good faith' necessary to establish the privilege should not be confused with the issue of 'state of mind' necessary to defeat it. See, *e.g., St. Amant v. Thompson* (1968), 390 U.S. 727, 732 * * *.

**{¶46}** 'This distinction has been obscured, especially in the English cases, by the theory that a privileged occasion is such because the circumstances repel the inference of malice; that is, they are more consistent with the absence than the presence of malice. The fallacy of this rationale is apparent when it is remembered that "malice" in any real sense is an unimportant factor in defamation unless the publication is made upon a privileged occasion. It is strange indeed, then, that the fact that the circumstances negative the inference of malice is the factor that makes a situation privileged.' [2 Harper, James & Gray, *The Law of Torts*, Section 5.25, at 214-215 (2d Ed.1986).]

**{¶47}** The issue of malice is consigned to the question of abuse of privilege. It does not arise unless a privilege is first found to exist. It is anomalous to suggest that the existence of a privilege is dependent upon that which is not called into play but for the existence of the privilege. Moreover, in Ohio a qualified privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice. [*Jacobs v. Frank*, 60 Ohio St.3d 111 (1990)], paragraph two of the syllabus.

**{¶48}** In essence, if the statements were not made in good faith, the qualified privilege is inapplicable. Assuming satisfaction of all other aforementioned elements, if the statements were made in good faith, such as in a situation where there was a belief in the truth of the assertions, the qualified privilege defense is applicable, thereby negating recovery by plaintiff. *DeAngelo v. W.T. Grant Co.*, 8th Dist. Cuyahoga No. 22411, 1952 Ohio App. LEXIS 874, *9 (May 26, 1952) ("if the occasion be privileged, the plaintiff may not recover although he proves that defendant used language actionable per se and that same was false"). Once the defense of the qualified privilege is invoked, it can be defeated only through a clear and convincing showing of actual malice. *Id.*

14

{¶49} In this case, the trial court seems to have determined the statements were not made in good faith and were made with malicious intent. In reality, once a determination is made that the statements were *not* made in good faith, there is no need for further inquiry. Quite simply, under that circumstance, the qualified privilege defense is inapplicable.

{¶50} Furthermore, it was not error for the trial court to determine qualified privilege inapplicable as a matter of law. "Where the circumstances of the occasion for the alleged defamatory communications are not in dispute, the determination of whether the occasion gives the privilege is a question of law for the court." *Blantik v. Dennison*, 148 Ohio App.3d 494, 505 (11th Dist.2000), *citing A & B-Abell Elevator Co., Inc.*, *supra*, at 7. We agree with the conclusion of the trial court that the statements were not made in good faith, and therefore, the qualified privilege did not apply; it was not error to fail to instruct the jury on the defense of qualified privilege.

{¶51} Similarly, the trial court did not err in denying Stovall's motion for directed verdict with regard to the breach of contract claim. Paragraphs 3 and 9 of the Agreement provide that Stovall will not use any fact or circumstance that occurred prior to the execution of the Agreement and will refrain from retaliatory action against Utz. In Stovall's letters, she references the past conduct of Utz spanning an 11-year period. Moreover, Stovall cites to Utz's past conduct, including "verbal abuse and insults for many years," "previous demeaning behavior," and "behavioral patterns" of Utz. Furthermore, Stovall maintains that even if Utz demonstrated a breach, she failed to prove damages as evidenced by the jury verdict. This argument, however, is addressed in Stovall's fourth assignment of error.

15

**{¶52}** We do not find error in the trial court's denial of Stovall's motion for a directed verdict with regard to the breach of contract claim.

**{¶53}** Stovall's third and fifth assignments of error are without merit.

**New Trial**

**{¶54}** Stovall's fourth assignment of error states:

**{¶55}** "The trial court erred in granting Utz's motion for a new trial rather than only striking the punitive damage verdict and leaving the remainder of the judgment."

**{¶56}** In her fourth assignment of error, Stovall argues the trial court erred in granting Utz's motion for a new trial and, instead, should have granted Stovall's motion for judgment notwithstanding the verdict; i.e., the $191,000 punitive damages award should have been set aside, thereby leaving the remainder of the jury's verdict. Although not properly characterized as error, compounded in this assignment of error is the trial court's denial of Stovall's motion for judgment notwithstanding the verdict. We find the trial court did not err by granting Utz's motion for a new trial. Similarly, the trial court did not err in denying Stovall's motion for judgment notwithstanding the verdict.

**{¶57}** An order that vacates or sets aside a judgment or grants a new trial is a final, appealable order under R.C. 2505.02(B)(3). Pursuant to Civ.R. 50(B), a motion for a new trial may be joined with a motion for judgment notwithstanding the verdict, or a new trial may be prayed for in the alternative, as in the case sub judice. New trials are governed by Civ.R. 59. The trial court granted the new trial based upon the grounds set forth in Civ.R. 59(A)(3)(4)(5)(7) and (9): Accident or surprise which ordinary prudence could not have guarded against; Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice; Error in the amount of recovery,

16

whether too large or too small, when the action is upon a contract or for the injury or detention of property; The judgment is contrary to law; and Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

{¶58} The decision of whether to grant a motion for a new trial is entrusted to the sound discretion of the trial court, which "witnessed the trial firsthand and relied upon more than a cold record to justify a decision." *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, ¶39. Accordingly, this court reviews a trial court's decision on a motion for new trial under the abuse of discretion standard of review. *Effingham v. XP3 Corp.*, 11th Dist. Portage No. 2006-P-0083, 2007-Ohio-7135, ¶18.

{¶59} Pursuant to R.C. 2315.21(B):

> Punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:
>
> (1) The actions or omissions of that defendant demonstrate malice * * *, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate; [and]
>
> (2) The plaintiff in question has adduced proof of actual damages that resulted from actions or omissions as described in division (B)(1) of this section.

{¶60} Consequently, Utz was required to demonstrate evidence of malice on the part of Stovall and actual damages before her claim for punitive damages could be considered by the jury.

{¶61} "Malice" is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334 (1987).

17

{¶62} Here, the jury awarded $191,000 in punitive damages, but did not award Utz any compensatory damages. Punitive damages may not be awarded when a jury fails to award compensatory damages. *Bishop v. Grdina*, 20 Ohio St.3d 26 (1985). However, in this case, it is clear the trial court felt that compensatory damages, at least to some degree, had been established. The trial court then noted that the jury instructions were confusing with regard to damages and concluded that, in the interest of justice, the proper remedy was to grant a new trial and that the jury should have, at the very least, awarded nominal damages. We cannot say this was an abuse of the trial court's discretion, and we thus concur with the conclusion that a new trial is a proper remedy under these facts.

{¶63} Stovall's fourth assignment of error is without merit.

{¶64} Based on the opinion of this court, the judgment of the Portage County Court of Common Pleas is hereby affirmed.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

18