[Cite as *Haverhill Glen, L.L.C. v. Eric Petroleum Corp.*, 2016-Ohio-8030.]


STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT


| | | |
|---|---|---|
| HAVERHILL GLEN, LLC, et al. | ) | |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | CASE NO. 14 HA 0022 |
| VS. | ) | |
| | ) | OPINION |
| ERIC PETROLEUM CORPORATION | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from the Court of Common
                                                            Pleas of Harrison County, Ohio
                                                            Case No. CVH 2013 0034

JUDGMENT:                                         Affirmed.

APPEARANCES:
For Plaintiff-Appellant                           Attorney Daniel Gibson
                                                            Attorney Mathew Warnock
                                                            100 South Third Street
                                                            Columbus, Ohio 43215-4291

For Defendant-Appellee                       Attorney Randolph Snow
                                                            Attorney James Wherley, Jr.
                                                            Attorney Whitney Willits
                                                            220 Market Avenue South, Suite 1000
                                                            Canton, Ohio 44702

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb


                                                            Dated: December 2, 2016

DeGENARO, J.

{¶1} Plaintiff-Appellant, Haverhill Glen, LLC, (Haverhill) appeals the judgment of the Harrison County Court of Common Pleas granting Defendant-Appellee Eric Petroleum Corporation's motion for summary judgment, and denying Haverhill's. Because the force majeure clause is dispositive of the appeal and the trial court properly relied upon that clause, Haverhill's argument in that regard is meritless, rendering the remaining arguments moot. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2} This lawsuit concerns a May 17, 2004 oil and gas lease covering approximately 3,583 acres in Harrison County. It is often termed the Childs Lease, due to the first lessor to sign being named J. Mabon Child, Jr. The original lessors were, generally, various descendants and relatives of James F. Hillman, who was the owner of Harmon Creek Coal and Haverhill Coal Company (the Hillman Heirs). The original lessee was Burlington Resources Oil & Gas Company LP.

{¶3} The Lease involves property located in Green Township originally owned by Harmon Creek Coal, along with property in German and Rumley Townships originally owned by Haverhill. The latter is known as the Haverhill Exception. Before the filing of the Complaint herein, the Hillman Heirs transferred their fractional interests in the Childs Property to Appellant Haverhill Glen, an Ohio limited liability company wholly owned by the Hillman Heirs.

{¶4} Thus, Haverhill is the original lessors' successor-in-interest under the Lease. Haverhill owns the oil and gas rights to the property only; it does not own the surface.

{¶5} Eric Petroleum is the original lessee's successor-in-interest under the Lease. Eric Petroleum obtained its interest in the Lease by way of an Assignment and Bill of Sale dated September 4, 2007, effective October 1, 2007.

{¶6} The habendum clause, Section 2 of the Lease, states in relevant part: "Term of Lease. It is agreed that this lease shall remain in force for a term of five (5) years from the date, and as long thereafter as oil and gas, or either of them, is produced from said land by the Lessee, its successors and assigns."

**{¶7}** Section 15, typically known as a force majeure clause, states in pertinent part:

> * * * When drilling, reworking, production or other operations are prevented or delayed by * * * inability to obtain necessary * * * access or easements, * * * or by any other cause not reasonably within Lessee's control, this lease shall not terminate because of such prevention or delay, and shall be maintained in force and effect for so long as prevention or delay continues, and for ninety (90) days thereafter, or so long as this lease is maintained in force by some other provisions thereof, whichever is the later date. Lessee shall not be liable for breach of any express or implied covenants of this lease when drilling, production, or other operations are so prevented, delayed, or interrupted.

**{¶8}** The Lease includes 362.88 acres in Green Township where New Rocky Valley Farms, Inc. owns the surface. The remaining acreage, totaling approximately 3,220 acres, is located in German and Rumley Townships. After receiving its interest in the Lease, Eric Petroleum investigated potential drill sites and hired an independent geophysicist to further evaluate potential drill sites. Thereafter, Eric Petroleum drilled a test well in Jefferson County, Ohio. Although that well was not located on the Childs Property, as a result of this well and the geophysical research, Eric Petroleum determined that the best potential development site was located on the Childs Property in Green Township, on the surface owned by New Rocky.

**{¶9}** In June 2008, Eric Petroleum sent its land manager, Tim Silker, to meet with the owners of New Rocky Property to discuss Eric Petroleum's plans for development, including entering the property, drilling a well, producing natural gas and taking it to market. New Rocky, who owns none of the mineral rights of the Childs Property, would not allow Eric Petroleum to enter.

**{¶10}** Knowing that New Rocky owns adjacent mineral rights, Eric Petroleum offered to lease the adjacent New Rocky property in an effort to gain access to the

Childs Lease surfaces. Eric Petroleum proposed that the adjacent property would be included in a development unit to allow New Rocky to receive royalties. New Rocky declined this offer.

**{¶11}** On January 20, 2009, Eric Petroleum attempted to gain access to the New Rocky surface property to conduct a survey of the same and to stake the well site for proposed "Childs #1 Well." Eric Petroleum's representatives were denied access and they were cursed at, lunged at and physically threatened. They were told: "if I catch you mousing around on this farm, you are not going to leave the same way you came on and your [sic] not going to like the way you leave this place." They were further told they would need a court order to access the property. Eric Petroleum's representative contacted the Harrison County Sheriff's Department, but was again told it would need a court order to access the property.

**{¶12}** Prior to the problems with New Rocky, Eric Petroleum had been advised by a larger surface owner that it also disputed Eric Petroleum's rights under the Lease. Faith Ranch and Farms Inc., dba Faith Ranch, owns approximately 2,400-2,700 acres in Rumley and German Townships that is part of the 3,583 acres subject to the Childs Lease. As early as 2008, Faith Ranch claimed that it owned the minerals underlying that land. Subsequently, Faith Ranch recorded an affidavit of abandonment regarding that acreage stating during the ownership of the surface of that land from March 22, 1969, to date, "Faith Ranch's predecessors in title * * * and Faith Ranch have excluded anyone from exercising any rights to the mineral estate and interest of the Haverhill Exception[,]" and that "Faith Ranch's predecessors in title * * * and Faith Ranch have been in the undisputed, open, continuous, uninterrupted, exclusive, hostile and notorious possession of the mineral estate and interest in the Haverhill Exception." Faith Ranch also purported to lease that acreage to Gulfport Energy Corporation in 2011. Thus, the surface owners of a substantial part of the Property subject to the Childs Lease either disputed Eric Petroleum's rights or prevented the company's access.

**{¶13}** Returning to the issues involving the New Rocky Property, in January 2009, Thomas Hill, counsel for Eric Petroleum, contacted Haverhill's then-managing

officer, John Oliver, to inform him of the denial of access. At around that time, Hill asked Oliver whether the Hillman Heirs would be willing to be co-plaintiffs in a lawsuit against New Rocky to gain surface access. Oliver responded that, at that point in time, he did not know of any reason why the Hillman Heirs would not do so. Eric Petroleum then began working with the Hillman Heirs and Haverhill in anticipation of filing a lawsuit against New Rocky to gain surface access.

{¶14} Meanwhile, in February 2009, New Rocky granted Eric Petroleum limited access to the property to perform surveying; this information was then used by Eric Petroleum to obtain a permit from the Ohio Department of Natural Resources for the Childs #1 Well.

{¶15} However, in March 25, 2009, New Rocky informed Eric Petroleum it would not allow drilling to occur on the acreage in question unless compensated. The figure New Rocky eventually requested was one million dollars.

{¶16} At the end of March 2009, upon receiving New Rocky's letter denying access to drill, Eric Petroleum gave notice to Haverhill and the Hillman Heirs that, due to actions of New Rocky, Eric Petroleum was declaring a force majeure under paragraph 15 of the Lease. Eric Petroleum offered the Hillman Heirs $17,915.66 (an additional delay rental payment) to sign a written extension of the Lease or to sign a new lease; however, they did not sign.

{¶17} Both prior to and after the expiration of the Lease's primary term, Eric Petroleum worked cooperatively with the Hillman Heirs and Haverhill in anticipation of filing a lawsuit against New Rocky to gain surface access. Attorney Hill began planning the suit with Haverhill's Ohio counsel, Thomas Moushey. Hill and Moushey worked to have deeds transferred from the Hillman Heirs to Haverhill Glen. Eric Petroleum delayed filing suit in order to first accomplish the transfers. Hill performed title work, amended a certificate of transfer and traveled to Allegheny County, Pennsylvania to obtain certified copies from the Orphan's Court in Pittsburgh. Moushey drafted consent forms for the twelve Hillman Heirs agreeing to be plaintiffs in the action, along with Eric Petroleum, against New Rocky. Ten of the twelve heirs ultimately signed these forms—five signed prior to the end of the Lease's primary

term.[1]

**{¶18}** However, despite all of the above, on April 18, 2013, Haverhill filed the instant declaratory judgment action against Eric Petroleum, seeking a declaration that the parties' Lease had expired due to non-production during the primary term. Eric Petroleum disputed the expiration of the Lease on three grounds: (1) a contractual force majeure prevented production; (2) obstruction by a third party surface owner prevented production; (3) that Haverhill Glen should be estopped from asserting that the Lease had terminated due to its inconsistent conduct.

**{¶19}** As the lawsuit proceeded, the trial court issued a stipulated judgment entry regarding equitable tolling of the Lease terms, ruling that if Eric Petroleum prevailed and the Lease was valid, at the conclusion of any appellate period "Eric Petroleum shall have an additional 207 days remaining under the primary term of the Childs Lease."

**{¶20}** Haverhill filed a motion for judgment on the pleadings, which was denied by the trial court. Discovery commenced. Haverhill and Eric Petroleum filed cross-motions for summary judgment. On December 1, 2014, the trial court granted Eric Petroleum's motion for summary judgment and denied Haverhill's.

### Summary Judgment

**{¶21}** Haverhill asserts the following two assignments of error, which will be discussed together:

> The trial court erred by granting Eric Petroleum's motion for Summary Judgment December 1, 2014 order (the "Decision"), p.11.

> The trial court erred by denying Haverhill's motion for Summary Judgment. Decision, p.11.

**{¶22}** When reviewing a trial court's summary judgment, an appellate court

---

[1] The lawsuit against New Rocky was ultimately filed by Eric Petroleum in October 2010; Haverhill was not named as a party at that time, although it was later joined as an involuntary plaintiff. The lawsuit was resolved on September 2, 2014 when the trial court granted summary judgment in favor of all claims asserted by Eric Petroleum. The order was not appealed.

applies a de novo review. *Parenti v. Goodyear Tire & Rubber Co.*, 66 Ohio App.3d 826, 829, 586 N.E.2d 1121 (9th Dist.1990). Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000). Further, "[t]he construction of written contracts and instruments of conveyance is a matter of law." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus, quoting *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996).

{¶23} Haverhill argues that the Lease has expired, and thus, the trial court erred in granting summary judgment in favor of Eric Petroleum and by denying its cross-motion. The trial court based its judgment that the Lease is still in effect upon three rationales: the force majeure provision in Section 15 of the Lease; the doctrine of obstruction; and the doctrines of waiver and estoppel. Although Haverhill challenges all three rationales, the force majeure clause controls resolution of this appeal.

### Force Majeure

{¶24} As an initial matter, "'[t]he rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties.'" *Swallie v. Rousenberg*, 190 Ohio App.3d 473, 483, 2010-Ohio-4573, 942 N.E.2d 1109, ¶ 61 (7th Dist.), quoting *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897).

{¶25} Haverhill argues that the trial court erred by concluding that the force majeure clause of the Lease was triggered by New Rocky's refusal to permit surface access to the Property. Generally, force majeure is a term from the French law and literally means a superior force. It is commonly defined as an event or effect that can

be neither anticipated nor controlled. Black's Law Dictionary 673-674 (8th Ed.2004). Haverhill cites a First District case, which provides: "To use a force majeure clause as an excuse for nonperformance, the nonperforming party bears the burden of proving that the event was beyond the party's control and without its fault or negligence." *Stand v. Energy Corp. v. Cinergy Servs.*, 144 Ohio App.3d 410, 416, 760 N.E.2d 453 (1st Dist.2001). This is a relatively new concept in Ohio law.

{¶26} Force majeure has been characterized by courts as a defense that has some overlap with the common law defenses of impossibility or impracticability. *See Great Lakes Gas Transmission Ltd. v. Essar Steel Minn.*, LLC, 871 F.Supp.2d 843, 856 (D. Minn. 2012). However, ultimately courts must look to the language of the contract's force majeure provision to determine its applicability.

{¶27} As delineated above, the force majeure clause in Paragraph 15 is broadly written. It provides that when drilling or other operations are prevented or delayed by the inability to obtain necessary access or easements or "any other cause not reasonably within the Lessee's control," the primary term of the Lease is tolled.

{¶28} In January 2009, Eric Petroleum attempted to gain access to the New Rocky surface property to conduct a survey of the same and to stake the well site, Eric Petroleum was not only denied access, its representatives were physically threatened. The next month, New Rocky did grant Eric Petroleum limited access to the property to perform surveying; this information was then used by Eric Petroleum to obtain a well permit. However, on March 25, 2009, New Rocky informed Eric Petroleum it would not allow drilling to occur on the acreage in question unless compensated. The figure New Rocky eventually requested was one million dollars. With the primary term of the Lease set to expire less than two months later, on May 17, 2009, Eric Petroleum declared a force majeure pursuant to paragraph 15 of the Lease. The trial court was correct in concluding that the force majeure clause was triggered based upon these facts. This is precisely the situation that this Lease provision was intended to cover.

{¶29} Nonetheless, Haverhill argues that the force majeure clause does not apply because Eric Petroleum was not *completely* denied access to the entirety of

the Childs Property, i.e., it claims Eric Petroleum was only denied access to the New Rocky Property and was not denied access to the remainder of the Childs Property in German and Rumley Townships.

**{¶30}** Eric Petroleum counters that Haverhill's argument is factually incorrect because the uncontroverted evidence shows there was a complete denial of access. It is undisputed that Eric Petroleum was denied access to the New Rocky acreage. The affidavit of Faith Ranch, surface owner of the German and Rumley township surface acreage, stated that Faith Ranch and its predecessor in title "had excluded anyone from exercising any rights to the mineral estate and interest of the Haverhill Exception" since 1969.

**{¶31}** Haverhill takes issues with several aspects of the Faith Ranch affidavit, but all of its arguments are meritless. It does not matter—contrary to Haverhill's contentions—that EPC never actually attempted to drill on Faith Ranch surface acreage, or that Faith Ranch's affidavit was dated 2011, well after the expiration of the Lease's primary term. It is clear that Faith Ranch disputed that any other entity held mineral interests underlying its surface property.

**{¶32}** Moreover, prior to the issues with New Rocky, in 2008, Eric Petroleum's land manager Timothy Silker met with a representative of Faith Ranch, who informed him of his belief that Faith Ranch, not the Hillman Heirs, owned the mineral rights to the German and Rumley township acreage. Eric Petroleum would have been denied access by Faith Ranch, had it attempted to drill on German and Rumley Townships acreage.

**{¶33}** Alternatively, Eric Petroleum argues that a complete denial of access to all acreage is not required under the force majeure clause. The force majeure clause here is quite broadly written to include situations where "drilling * * * or other operations are *prevented or delayed by* * * * inability to obtain necessary * * * access." (Emphasis added.) Urging us to reach the opposite conclusion, Haverhill relies on this court's decision in *Gardner v. Oxford Oil Co.*, 2013-Ohio-5885, 7 N.E.3d 510, ¶ 29 (7th Dist.).

**{¶34}** *Gardner* is factually distinguishable for a number of reasons. First and

foremost, that case did not involve a force majeure clause. Second, *Gardner* has a unique fact-pattern. There, the oil and gas company assigned the landowner the shallow rights to the leasehold, along with an equipped well, but retained the deep rights. The landowner never brought the well into production and the oil and gas company failed to drill a deep well elsewhere on the property and the lease expired under its own terms. This court rejected the oil and gas company's argument that the landowner "unilaterally extinguished its deep rights," explaining:

> Oxford Oil could have drilled a productive deep well elsewhere on the 109 acres to preserve its leasehold interest before it sold the Miracle Well to Gardner. Alternatively, it could have negotiated a right of first refusal provision in the assignment to repurchase the well from Gardner in the event he would choose to take the Miracle Well out of production. Either alternative would have guarded against this very situation. And the assertion that the assignment created an obligation for Gardner to continue production to maintain Oxford Oil's interest is likewise meritless. There is no provision in the assignment creating such an obligation; the language Oxford chose to employ in the assignment and Oxford's own inaction terminated its leasehold rights.

*Gardner* at ¶ 29.

{¶35} Haverhill also argues that a determination that the force majeure applied for so long as New Rocky was denied access was "contrary to the express obligations set forth in Paragraph 19 of the Lease, which required that Eric Petroleum drill a new well every two years after the expiration of the primary term, regardless of whether New Rocky was precluding access to the preferred location for the first well." First, Haverhill failed to raise this argument in the trial court. *See, e.g., Litva v. Richmond*, 172 Ohio App.3d 349, 2007-Ohio-3499, 874 N.E.2d 1243, ¶ 18 (7th Dist.) ("[T]he parties are not given a second chance to raise arguments that they should have raised below.") (citation omitted). More importantly, Paragraph 19, expressly concerns the drilling during the *secondary term* of the Lease, which has not been

triggered in this case.

**{¶36}** In sum, as the trial court aptly noted:

> Drilling and placing an oil and gas well into production is an expensive endeavor. The Defendant bargained and paid for the right to do so on the acreage which provided them with the best opportunity to succeed in their venture. They further negotiated and paid for the inclusion of a force majeure clause in their Lease. They have the right to rely upon the language contained therein to protect their investment.

**{¶37}** The trial court properly invoked the force majeure clause of the Lease and granted summary judgment in favor of Eric Petroleum. As this rationale is dispositive of the appeal, consideration of the trial court's alternative rationales for granting summary judgment is moot. Accordingly, Haverhill's assignments of error are meritless and the judgment of the trial court is affirmed.

Donofrio, P. J., concurs.

Robb, J., concurs.