[Cite as *Cafaro-Peachcreek Joint Venture Partnership v. Spanggard*, 2022-Ohio-4468.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| CAFARO-PEACHCREEK JOINT VENTURE PARTNERSHIP, | CASE NO. 2022-T-0004 |
| Plaintiff-Appellee/ Cross-Appellant, | Civil Appeal from the Court of Common Pleas |
| - v - | |
| JILL SPANGGARD d.b.a. VAPOR GUY, | Trial Court No. 2020 CV 01043 |
| Defendant-Appellant/ Cross-Appellee. | |

**O P I N I O N**

Decided: December 12, 2022
Judgment: Reversed and remanded

*Leonard D. Hall* and *Ronald J. Yourstowsky*, 5577 Youngstown-Warren Road, Niles, OH 44446 (For Plaintiff-Appellee/Cross-Appellant).

*Steven W. Mastrantonio* and *Daniel J. Orlando*, Weisensell, Mastrantonio & Niese, LLP, The Nantucket Building, 23 South Main Street, Suite 301, Akron, OH 44308 (For Defendant-Appellant/Cross-Appellee).

MARY JANE TRAPP, J.

{¶1} Defendant-appellant/cross-appellee, Jill Spanggard ("Ms. Spanggard"), and plaintiff-appellee/cross-appellant, Cafaro-Peachcreek Joint Venture Partnership ("Cafaro"), appeal from the judgments of the Trumbull County Court of Common Pleas granting summary judgment in favor of Cafaro on its breach of contract claim against Ms. Spanggard and on Ms. Spanggard's counterclaims and awarding Cafaro damages of $18,513.67.

{¶2}   Ms. Spanggard asserts two assignments of error.  First, Ms. Spanggard contends that the trial court erred in granting summary judgment to Cafaro on its breach of contract claim by failing to void the parties' agreement based on the doctrine of frustration of purpose, by failing to "balance the equities" in the case, and by failing to find that Cafaro materially breached the parties' agreement.  Second, Ms. Spanggard contends that the trial court erred in calculating Cafaro's damages.

{¶3}   Cafaro asserts one cross-assignment of error, contending that the trial court erred in failing to award post-judgment interest at a contractual rate of 18% per annum.

{¶4}   After a careful review of the record and pertinent law, we find as follows:

{¶5}   (1) The trial court erred by granting summary judgment to Cafaro on its breach of contract claim.  The trial court did not err in failing to void the parties' agreement based on the doctrine of frustration of purpose or by failing to "balance the equities." However, the record reflects there are genuine issues of material fact regarding whether Cafaro performed its contractual obligations.

{¶6}   (2) Because we reverse the trial court's summary judgment in favor of Cafaro on its breach of contract claim, we necessarily reverse the trial court's damages award in favor of Cafaro.

{¶7}   (3) In light of our disposition of Ms. Spanggard's assignments of error, Cafaro's cross-assignment of error is moot.

{¶8}   Thus, we reverse the judgments of the Trumbull County Court of Common Pleas and remand for further proceedings consistent with this opinion.

## Substantive and Procedural History

{¶9}   Cafaro is an Ohio general partnership with a principal place of business in Niles, Ohio.  Ms. Spanggard is a resident of Erie, Pennsylvania, who conducted business

2

Case No. 2022-T-0004

under the name, "Vapor Guy." In November 2019, the parties entered into an "In-Line License Agreement," whereby Cafaro granted Ms. Spanggard a license to occupy and use the premises known as unit 410 at the Millcreek Mall in Erie, Pennsylvania, for a term of 14 months. Ms. Spanggard agreed to use the unit "for the sole purpose of the first-class operation of a retail unit selling electronic cigarettes and accessories, and for no other purpose." She further agreed to pay monthly charges for rent, marketing, and trash removal. The parties' agreement contains no "force majeure" provision.

{¶10} On March 16, 2020, the Governor of Pennsylvania issued an order requiring non-essential businesses to close for 14 days in an effort to stop the spread of COVID-19. On the same date, Cafaro issued a notice informing Ms. Spanggard that the mall would close for business at 6:00 p.m. and would remain closed until the governor's order was lifted. According to Ms. Spanggard, Cafaro ordered her to vacate the unit, locked the mall's entryways, and denied her access to retrieve her inventory and other assets. In an email sent later that evening, Ms. Spanggard challenged the legality of Cafaro's actions and alleged that it had effectively breached the parties' agreement.

{¶11} Several weeks later, on May 4, Ms. Spanggard's associate, Andrew Book ("Mr. Book"), informed Cafaro that Ms. Spanggard was no longer conducting business at the mall and returned custody and control of the unit to Cafaro. According to Ms. Spanggard, Cafaro permitted her to retrieve her property from the unit three days later. The mall eventually reopened on June 26.

{¶12} In September 2020, Cafaro filed a "complaint for money only" against Ms. Spanggard in the Trumbull County Court of Common Pleas, seeking a judgment of

3

$19,324.27, subsequently incurred charges, and interest at a contractual rate of 18% per annum.[1]

**{¶13}** Ms. Spanggard filed an answer, affirmative defenses, and counterclaims for wrongful retention of security deposit, breach of implied warranty of quiet enjoyment, breach of the license agreement, wrongful eviction, and equitable relief. Cafaro filed a reply to Ms. Spanggard's counterclaim.

**{¶14}** Cafaro filed a motion for summary judgment on its breach of contract claim and on Ms. Spanggard's counterclaims and requested $42,644.26 in damages, including $24,130.59 in liquidated damages, plus interest at a contractual rate of 18% per annum. Ms. Spanggard filed a brief in opposition.

**{¶15}** On November 17, 2021, the trial court filed a judgment entry denying Cafaro's motion for summary judgment. The trial court found that Ms. Spanggard quit the premises and that her frustration of purpose defense was not available based on this court's decision in *Wroblesky v. Hughley*, 2021-Ohio-1063, 169 N.E.3d 709 (11th Dist.), *appeal not accepted*, 164 Ohio St.3d 1421, 2021-Ohio-2923, 172 N.E.3d 1049. The trial court found that Ms. Spanggard breached the agreement but that Cafaro's request for liquidated damages constituted an unenforceable penalty.

**{¶16}** Cafaro filed a motion for summary judgment "on all matters except for liquidated damages," incorporating its prior motion for summary judgment and all other pleadings and briefs previously filed. Ms. Spanggard filed a brief in opposition.

---

1. The parties' agreement required Cafaro to file suit for nonpayment of rent or breach of the agreement in either the Mahoning or Trumbull County Court of Common Pleas. It further provided that Ms. Spanggard waived any defense of improper venue or lack of personal jurisdiction and that Ohio law governed.

4

Case No. 2022-T-0004

{¶17} On December 21, 2021, the trial court filed a judgment entry granting summary judgment in favor of Cafaro on its breach of contract claim and on Ms. Spanggard's counterclaims and awarded Cafaro $18,513.67 in damages for rent, trash removal, marketing, fire safety, storm sewer, and finance charges. The entry does not expressly reference post-judgment interest.

{¶18} Ms. Spanggard appealed and raises the following two assignments of error:

{¶19} "[1.] The trial Court erred in its decision to grant Appellee's Motion for Summary Judgment on Appellee's claim for breach of contract in its Order and Judgment Entry Dated November 17, 2021, finding that Spanggard quit the premises, that the doctrine of frustration of purpose was unavailable as a defense, and that Spanggard breached the Lease.

{¶20} "[2.] The trial Court erred in its calculation of damages that it awarded to Appellee in its Order and Judgment Entry Dated December 21, 2021, by finding that Appellee was entitled to $18,513.67 for rental payments, trash removal, marketing, fire safety, storm sewer, and finance charges, many of which were not actually incurred by Appellee after Appellant vacated the premises, or were incurred only after the mall was reopened." [Sic throughout.]

{¶21} Cafaro cross-appealed and raises the following cross assignment of error:

{¶22} "The trial court erred in failing to include the contractual post-judgment interest rate in its December 21, 2021, Judgment Entry for Plaintiff-Appellee/Cross-Appellant, such made necessary by Defendant-Appellant/Cross-Appellee's breach of the contract."

5

Case No. 2022-T-0004

**Standard of Review**

{¶23} This appeal involves the trial court's summary judgment orders, which we review de novo. *See Sabo v. Zimmerman*, 11th Dist. Ashtabula No. 2012-A-0005, 2012-Ohio-4763, ¶ 9. A reviewing court applies the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *Id.*

{¶24} "Since summary judgment denies the party his or her 'day in court,' it is not to be viewed lightly as docket control or as a 'little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party." *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶ 40.

{¶25} "'Because summary judgment represents a shortcut through the normal litigation process by avoiding a trial, the burden is strictly upon the moving party to establish, through the evidentiary material permitted by the rule, that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.'" *Ames v. Portage Cty. Budget Comm.*, 11th Dist. Portage No. 2021-P-0074, 2022-Ohio-1905, ¶ 38, quoting *Fugate v. Volck*, 79 Ohio App.3d 263, 266, 607 N.E.2d 78 (2d Dist.1992). Where a party seeks affirmative relief on its own claim as a matter of law under Civ.R. 56(A), it bears the burden of affirmatively demonstrating that there are no genuine issues of material fact with respect to every essential element of its claim. *Capital Fin. Credit, L.L.C. v. Mays*, 191 Ohio App.3d 56, 2010-Ohio-4423, 944 N.E.2d 1184, ¶ 5 (1st Dist.).

{¶26} "[I]f the moving party's burden is not met in the first instance, the burden never shifts to the nonmoving party, and the motion for summary judgment must be denied." *Hicks v. Cadle Co.*, 2016-Ohio-4728, 66 N.E.3d 1255, ¶ 20 (11th Dist.). "If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden

6

* * * to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate, shall be entered against the nonmoving party * * *." *Welch* at ¶ 40.

## Breach of Contract

{¶27} In her first assignment of error, Ms. Spanggard contends that the trial court erred in granting summary judgment in favor of Cafaro on its breach of contract claim.

{¶28} To establish a breach of contract claim, a party must demonstrate (1) the existence of a binding contract or agreement; (2) the non-breaching party performed its contractual obligations; (3) the breaching party failed to fulfill its contractual obligations without legal excuse; and (4) the non-breaching party suffered damages as a result of the breach. *Utz v. Stovall*, 11th Dist. Portage No. 2012-P-0135, 2013-Ohio-4299, ¶ 28.

### *Frustration of Purpose*

{¶29} In her first issue for review, Ms. Spanggard argues that the trial court erred by failing to void the agreement pursuant to the doctrine of frustration of purpose. According to Ms. Spanggard, the purpose of the parties' agreement was frustrated when the Governor of Pennsylvania shut down the mall due to COVID-19.

{¶30} This court recently discussed the doctrine of frustration of purpose in *Wroblesky*, *supra*. As we explained, Ohio courts that have recognized the doctrine have adopted the standard set forth in the Restatement of the Law:

{¶31} "Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the

7

contrary." Restatement of the Law 2d, Contracts, Section 265, at 334 (1981); *see Wroblesky* at ¶ 57-58.

{¶32} However, we noted that the doctrine is not widely accepted in Ohio and that neither the Supreme Court of Ohio nor this court has adopted it. *See id.* at ¶ 54-55. Thus, we expressly declined to adopt it. *See id.* at ¶ 56.

{¶33} This court is generally bound by past precedent produced by our own district. *Keytack v. Warren*, 11th Dist. Trumbull No. 2005-T-0152, 2006-Ohio-5179, ¶ 51. Accordingly, the trial court did not err by failing to void the parties' agreement based on the doctrine of frustration of purpose.

### *Balancing of Equities*

{¶34} In her second issue for review, Ms. Spanggard argues that the trial court erred by failing to "balance the equities" in the case. According to Ms. Spanggard, an "equitable solution" would have been to find that her contractual obligations were suspended while the mall was closed.

{¶35} Ms. Spanggard did not present this argument to the trial court in opposition to summary judgment. If the nonmoving party fails to raise an issue when responding to the moving party's motion for summary judgment, the nonmoving party has waived that issue on appeal. *Great Lakes Window, Inc. v. Resash, Inc.*, 11th Dist. Trumbull No. 2006-T-0114, 2007-Ohio-5378, ¶ 24.

{¶36} Even if Ms. Spanggard had properly preserved this issue for appeal, she has failed to identify the equitable defense she is asserting or cite any authority in support of her argument. *See* App.R. 16(A)(7) (requiring an appellant to include citations to "authorities" and "statutes" in its brief).

8

{¶37} In essence, Ms. Spanggard argues that her performance should have been excused based on principles of "force majeure."  Force majeure is a term from French law that literally means "a superior force."  *Haverhill Glen, LLC v. Eric Petroleum Corp.*, 2016-Ohio-8030, 67 N.E.3d 845, ¶ 25 (7th Dist.).  It is commonly defined as "an event or effect that can be neither anticipated nor controlled."  *Id.*  Commentators have characterized the COVID-19 pandemic as "'the very definition of force majeure.'"  Bernhardt & Fersko, *The Impacts of the Coronavirus Pandemic on Real Estate Contracts*, 35 Probate and Property 34 (Jan./Feb.2021).

{¶38} While force majeure has some overlap with the common law defenses of impossibility or impracticability, it is based in contract.  *See Haverhill Glen* at ¶ 26.  "[F]undamental principles of contract law teach us that parties to a commercial transaction should remain free to govern their own affairs."  *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 41-42, 537 N.E.2d 624 (1989).  Therefore, courts must look to the language of a contract's force majeure provision to determine its applicability.  *Haverhill Glen* at ¶ 26.  For instance, a force majeure provision may not excuse all of a party's contractual obligations, such as its obligation to pay rent.  *See, e.g., Wroblesky* at ¶ 65-66.

{¶39} Here, the parties' agreement contained no force majeure provision, much less one that excluded Ms. Spanggard's payment obligations under these circumstances.  Accordingly, we find no error in the trial court's failure to "balance the equities."

### Cafaro's Performance

{¶40} In her third issue for review, Ms. Spanggard argues that the trial court erred by failing to find that Cafaro materially breached the agreement by revoking her access to the unit.  Ms. Spanggard contends that Cafaro did not establish the second element of

9

its breach of contract claim, i.e., that it performed its contractual obligations. *See Utz, supra*, at ¶ 28.

{¶41} The parties' agreement is referred to as a "license."[2] In the context of real property, a license is "'an authority to do a particular act or series of acts upon another's land, without possessing any estate therein.'" *Mosher v. Cook United, Inc.*, 62 Ohio St.2d 316, 317, 405 N.E.2d 720 (1980), quoting *Rodefer v. Pittsburg, O. V. & C. Rd. Co.*, 72 Ohio St. 272, 281, 74 N.E. 183 (1905). "One who possesses a license thus has the authority to enter the land in another's possession without being a trespasser." *Id.* Here, Cafaro granted Ms. Spanggard "a license to occupy and use" the unit for the operation of her retail business, "subject to the stated terms and conditions."

{¶42} On summary judgment, Cafaro did not contend or purport to establish that it performed its contractual obligations. In disputing the merits of Ms. Spanggard's counterclaims, Cafaro contended that it "had nothing to do with [Ms. Spanggard] not being permitted to operate" due to the governor's shut-down order. However, the governor's order does not establish that Cafaro *performed* its contractual obligations. At most, the governor's order *precluded* Cafaro from performing. As explained above, there is no force majeure provision in the agreement that would excuse Cafaro's performance under that circumstance. Thus, Cafaro did not meet its initial burden on summary judgment. *See Hicks, supra*, at ¶ 20. For this reason alone, Cafaro's motion for summary judgment should have been denied. *See id.*

---

2. The parties appear to dispute whether their agreement is a license or a lease. "Whether an instrument is a license or a lease depends generally on the manifest intent of the parties gleaned from a consideration of the entire contents of the instrument." *Di Renzo v. Cavalier*, 165 Ohio St. 386, 135 N.E.2d 394 (1956), paragraph two of the syllabus. However, the legal distinction between a license and a lease is immaterial to the issues on appeal.

10

**{¶43}** Even if Cafaro had met its initial burden, Ms. Spanggard set forth specific facts showing there is a genuine issue for trial. *See Welch*, *supra*, at ¶ 40. In her brief in opposition, Ms. Spanggard attached an affidavit from Mr. Book, who averred that on March 16, 2020, Cafaro "cut off our access to the Premises by ordering us to vacate the Premises"; "closed and locked all entryways into the Premises"; and "denied us access even to retrieve our inventory and other assets which were still located at the Premises."

**{¶44}** This court has recognized that "'[w]here * * * the evidence is conflicting as to which [party] committed the breach, or first breach, that issue should be submitted to the jury * * *.'" *Sentinel Consumer Prods. Inc. v. Mills, Hall, Walborn & Assocs., Inc.*, 110 Ohio App.3d 211, 216, 673 N.E.2d 967 (11th Dist.1996), quoting *Mays v. Hartman*, 81 Ohio App. 408, 77 N.E.2d 93 (1st Dist.1947), paragraph four of the syllabus.

**{¶45}** At oral argument, Cafaro countered that the agreement granted it a lien on Ms. Spanggard's inventory and business assets, which precluded her from retrieving them as a matter of law. However, a party cannot raise an argument for the first time at oral argument, particularly when it had ample opportunity to explore such issues in its brief. *Hughes v. Hughes*, 2020-Ohio-4653, 159 N.E.3d 893, ¶ 19 (10th Dist.). Further, the contractual provision cited by Cafaro does establish this contention as a matter of law.

**{¶46}** In sum, there are genuine issues of material fact as to whether Cafaro performed its contractual obligations. Accordingly, the trial court erred by granting summary judgment to Cafaro on its breach of contract claim.

**{¶47}** Ms. Spanggard's first assignment of error has merit in part. We reverse the trial court's November and December 2021 judgments.

11

Case No. 2022-T-0004

**Damages**

**{¶48}** In her second assignment of error, Ms. Spanggard contends that the trial court erred in calculating Cafaro's damages. Based on our disposition of Ms. Spanggard's first assignment of error, in which we have reversed the trial court's summary judgment in favor of Cafaro on its breach of contract claim, we necessarily reverse the trial court's damages award in favor of Cafaro.

**{¶49}** Ms. Spanggard's second assignment of error has merit in part.

**Post-Judgment Interest**

**{¶50}** In its cross-assignment of error, Cafaro contends that the trial court erred in failing to award it contractual post-judgment interest of 18% per annum. In light of our disposition of Ms. Spanggard's first and second assignments of error, Cafaro's cross-assignment of error is moot. *See* App.R. 12(A)(1)(c).

**{¶51}** For the foregoing reasons, the trial court's November and December 2021 judgments are reversed, and this matter is remanded for further proceedings consistent with this opinion.

MATT LYNCH, J., concurs,

THOMAS R. WRIGHT, J., concurs in judgment only.

12

Case No. 2022-T-0004